United States District Court
Middle District of Florida
Tampa Division

Robert Cothran, as the representative
of a class of similarly situated
persons, and on behalf of the Electric
Supply Employee Stock Ownership Plan,

      Plaintiff,

v.                                                                    Case No. 8:2023-cv-00518

George M. Adams Jr., Sandra Brock,
Shaker Brock, Kelly A. Pound, and
Harold Irwin,

      Defendants.
_____/

## AMENDED CLASS ACTION COMPLAINT

### Nature of the Action

1.     Plaintiff Robert Cothran ("Plaintiff"), as the representative of the Class described herein, and on behalf of the Electric Supply Employee Stock Ownership Plan (the "ESOP"), brings this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), against Defendants George M. Adams Jr., Sandra Brock, Shaker Brock, Kelly A. Pound,[1] and Harold Irwin (collectively "Defendants").

_____

[1] Defendants George M. Adams Jr., Sandra Brock, Shaker Brock, and Kelly A. Pound, collectively, are also referred to as "the family."

1

2.     As described herein, Defendants illegally liquidated employees' retirement benefits (shares of Electric Supply of Tampa, Inc. ("ESI") stock) held in the ESOP trust for less than fair market value.

3.     Defendants were motivated to keep the money in the family and abused their positions in doing so. Defendants George Adams Jr. and Sandra Brock, brother and sister and ESI's principal owners, were the only two members of the Plan Committee, which had the power to dictate sale terms to the ESOP trustee. As Plan Committee members, Adams Jr. and Sandra Brock answered only to ESI's board—controlled by themselves and their children, Defendants Kelly Pound and Shaker Brock. The only other member of the board was the family's longtime employee, Defendant Harold Irwin, who doubled as the ESOP trustee. The family and Irwin forced the ESOP to divest its ESI shares at a discount, thereby leaving more value for the family in the ensuing recapitalization of the company.

4.     Defendants also failed to prudently manage the ESOP's non-stock assets. When the family stopped supporting the ESOP through stock purchases as planned, participants started receiving cash contributions to their retirement accounts. Defendants failed to prudently invest cash contributions, or cash dividends on stock previously acquired. Cash held on participants' behalf for retirement earned less than 0.1% interest for five years.

2

5.     Plaintiff and other ESOP participants paid the price. Plaintiff received a smaller distribution from the ESOP due to Defendants' actions and omissions. Plaintiff brings this action on behalf of the ESOP, and ESOP participants as a class, to recover lost benefits and remedy Defendants' unlawful conduct.

## Introduction

6.     Defendant Adams Jr., along with his father, George Adams Sr., led ESI for decades after its founding in 1969. ESI epitomized a "family business." It was built by a father-son team, its stock was closely-held by family members, and its board was controlled by the family.

7.     In 2011, after Adams Sr. died, the company created the ESOP. The family soon began transferring shares of their ESI stock to the ESOP, with the goal of transferring majority ownership to the ESOP over time. Adams Jr. and his sister, Sandra Brock, established themselves as the only two members of the ESOP's Committee (the "Plan Committee). Harold Irwin, ESI's Chief Financial Officer at the time, was appointed the ESOP's trustee.

8.     For the first few years of the ESOP's existence, the family sold shares to the ESOP annually in furtherance of its stated goal of transferring majority ownership to the ESOP.

9.     In the ensuing years, ESI enjoyed rapid growth. As the company flourished, the family lamented its commitment to the ESOP and had a change

of heart. Rather than continuing to transfer ownership to the ESOP, the family held onto ESI's stock. Contributions to the ESOP earmarked for the purchase of ESI stock were instead left in cash. Dividends on shares initially purchased also piled up and were left in cash. These funds earned less than 0.1% interest during a period that workers earned an average of around 8% per year on their retirement funds.

10. In 2020, Defendants aggressively shopped the company, hoping to take advantage of the company's increase in value. While a sale should have benefited all shareholders equally, the family begrudged the ESOP its share of the company's success. After selecting an outside investor group interested in recapitalizing the company, Defendants split the transaction into two, allocating a below market price to all shareholders in the cash portion of the deal while extracting additional value for family shareholders in the form of discounted equity interests in the recapitalized company, which the ESOP did not receive.

11. As a result, Plaintiff and other ESOP participants received less value for their shares than did the family shareholders. The ESOP's loss was Defendants' gain. By shorting the ESOP, Defendants siphoned off the true value of the ESOP's shares to the family shareholders through discounted equity interests in the recapitalized company.

12. Each Defendant acted as a fiduciary in connection with the transaction and violated their fiduciary duties pursuant to ERISA. Rather than ensuring that the ESOP received the same value as family shareholders, Defendants worked in concert to divert value from the ESOP to family shareholders.

13. Plaintiff brings this action pursuant to 29 U.S.C. §§ 1104, 1106 & 1132(a)(2)-(3) to remedy Defendants' unlawful conduct, recover losses to the ESOP, and obtain other appropriate relief.

### Jurisdiction and Venue

14. Plaintiff brings this action pursuant to 29 U.S.C. §§ 1132(a)(2) and (3), which provide that participants in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and obtain monetary and appropriate equitable relief.

15. This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

16. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because the ESOP was administered in this district and several of the fiduciary breaches occurred in this district.

## Company Background

17.    In 1970, George Adams Sr. founded Electric Supply Inc., an electrical products distributor. Thereafter, his children, George Adams Jr., and Sandra Brock, joined the company. After Adams Sr.'s death in 2009, Adams Jr. took the helm at ESI.

18.    In 2011, ESI rolled out the ESOP. At the time, Adams Jr. and Sandra Brock wanted to honor all that ESI employees had given to the company over the years. In a message posted to the company's website for employees and prospective employees, Adams Jr. and Sandra Brock stated that their "ultimate goal" was transfer "a large majority percentage" of ESI to employees, which they believed would "ensure the company endured for future generations."

19.    ESI had $93 million in revenue in 2011.

20.    In 2014, ESI completed construction of a new 400,000 square foot facility. With increased capacity and efficiency, revenues and profits soared. Emerging markets in Central and Latin America also offered new opportunities and higher operating margins.

21.    In 2020, ESI reached $166 million in revenue.

## Parties

### *Plaintiff*

22.    Plaintiff Saul Cothran was employed by ESI as an auditor from 2009 until 2021, when he retired. Plaintiff was a participant in the ESOP, where he had shares of ESI stock and cash allocated to his individual account in the ESOP. He received a distribution of his account balance after Defendants sold the ESOP's ESI shares. If Defendants had complied with ERISA by obtaining fair value for the ESOP's shares and prudently investing the ESOP's cash, his account distribution would have been greater. Plaintiff was therefore injured by Defendants' actions.

### *The ESOP*

23.    The ESOP was established effective January 1, 2011 by ESI. The ESOP was administered at ESI's headquarters in Tampa, Florida. The ESOP was an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A); an "individual account plan" as defined by 29 U.S.C. § 1002(34) (also known as "defined contribution plan"); and an "employee stock ownership plan" as defined by 29 U.S.C. § 1007(d)(6).

24.    The ESOP's participants were employees of ESI with more than one year of service. ESI was thus the ESOP "employer" within the meaning of 29 U.S.C. § 1002(5). In its capacity as the ESOP employer, ESI was a "party in interest" to the ESOP under 29 U.S.C. § 1002(14)(C). The ESOP had around

7

109 participants at inception and grew to more than 180 participants by 2021. The purpose of the ESOP was to grant participants a retirement benefit based on the value of company stock allocated to their individual accounts.

25.     The ESOP was administered by the "Plan Committee." The Plan Committee members were designated the named fiduciaries of the ESOP pursuant to 29 U.S.C. § 1102. The Plan Committee members were appointed by ESI's board of directors.

26.     The ESOP's assets were held by a trustee appointed by ESI's board of directors. The trustee controlled the ESOP's shares. The Plan Committee had discretionary authority to direct the trustee with respect to the purchase and sale of ESI stock. Participants had no authority to buy or sell company shares directly.

27.     In 2012, 2013, and 2015, ESI contributed cash to the ESOP, and the ESOP purchased ESI shares from the family as follows:

| YEAR | SHARES PURCHASED |
| --- | --- |
| 2012 | 29,154 |
| 2013 | 11,840 |
| 2015 | 24,528 |
| TOTAL | 64,450 |

28.     After 2015, the family stopped selling ESI shares to the ESOP, even though the family was well short of its professed goal of providing majority ownership to the ESOP. In 2016, 2017, and 2018, ESI made contributions to the ESOP in cash, but no shares were purchased. In 2019 and

8

2020, the ESOP received dividends on shares acquired in 2012, 2013, and 2015, but no contributions or new shares. The contributions made in 2016 and thereafter, as well as the dividends, sat in cash-equivalent investments until the ESOP's termination in 2021. As of the end of 2020, $2.8 million in cash was sitting in an account earning interest at a rate of less than 0.1% per year.

29.    In April 2021, Defendants closed a recapitalization transaction with a private equity investment group called Supply Chain Equity Partners (hereinafter the "SCEP deal"). The ESOP received $3.3 million for its stake in the company. The ESOP was terminated upon closing the SCEP deal, and its assets were distributed in full in 2021 and 2022.[2]

*Defendants*

30.    Defendant George Adams Jr. served on ESI's board of directors throughout the ESOP period. He also served as the company's President and Chief Executive Officer. As a board member, he appointed himself to the Plan Committee and appointed Defendant Irwin as the ESOP trustee.  As one of two Plan Committee members (the other being his sister Sandra Brock), Adams Jr. had authority to direct the ESOP trustee to sell the ESOP's shares. He also had authority, as a Plan Committee member, to administer the ESOP. Based

---

[2] It would therefore be futile to attempt to seek relief administratively through the ESOP's benefit claim process. The ESOP has been terminated for nearly two years and has no assets, and Defendants are no longer in control of the company. Only a court can order the relief sought.

on his authority and actions with respect to the ESOP as both a member of the Plan Committee and board member, Adams Jr. was a fiduciary of the ESOP as defined by 29 U.S.C. § 1002(21)(A)(i) & (iii) and 29 U.S.C. § 1102.

31.     Adams Jr. owned more than 10% of ESI's stock immediately prior to the SCEP deal and at the time that the ESOP was terminated. As an owner, officer, and director of ESI, Adams Jr. was a party in interest to the ESOP as defined by 29 U.S.C. § 1002(14)(A), (H).

32.     Defendant Sandra Brock served on ESI's board of directors throughout the ESOP period. As a board member, she appointed herself to the Plan Committee, and appointed Defendant Irwin as an ESOP trustee.  As one of two Plan Committee members (the other being her brother Adams Jr.), Sandra Brock had authority to direct the ESOP trustee to sell the ESOP's shares. She also had authority, as a Plan Committee member, to administer the ESOP. Based on her authority and actions with respect to the ESOP as both a member of the Plan Committee and board member, Sandra Brock was a fiduciary of the ESOP as defined by 29 U.S.C. § 1002(21)(A)(i) & (iii) and 29 U.S.C. § 1102.

33.     Sandra Brock owned more than 10% of ESI's stock immediately prior to the SCEP deal and at the time that the ESOP was terminated. As an owner and director of ESI, Sandra Brock was a party in interest to the ESOP as defined by 29 U.S.C. § 1002(14)(A), (H).

10

34.     Defendant Shaker Brock (Sandra Brock's son and Adams Jr.'s nephew) joined ESI's board of directors in 2010 and was a director for the entirety of the ESOP's existence. Shaker Brock served ESI in several roles, including VP of Operations, VP of Digital Strategy and Marketing, and Chief Marketing and Technology Officer. Along with other board members, he had authority to appoint and remove Plan Committee members and the ESOP trustee. Based on his authority and actions with respect to the ESOP as a board member, Shaker Brock was a fiduciary of the ESOP as defined by 29 U.S.C. § 1002(21)(A)(i) & (iii).

35.     Shaker Brock owned ESI stock immediately prior to the SCEP deal and at the time that the ESOP was terminated. As a director and officer of ESI, Shaker Brock was a party in interest to the ESOP as defined by 29 U.S.C. § 1002(14)(F), (H).

36.     Defendant Kelly Pound (Adams Jr.'s daughter and Sandra Brock's niece) has been ESI's assistant secretary since 2009. Pound joined ESI's board of directors in 2011 and was a director for the entirety of the ESOP's existence. Along with other board members, she had authority to appoint and remove Plan Committee members and the ESOP trustee. Based on her authority and actions with respect to the ESOP as a board member, Pound was a fiduciary of the ESOP as defined by 29 U.S.C. § 1002(21)(A)(i) & (iii).

11

37. Pound owned ESI stock immediately prior to the SCEP deal and at the time that the ESOP was terminated. As a director and officer of ESI, Pound was a "party in interest" to the ESOP as defined by 29 U.S.C. § 1002(14)(F), (H).

38. Defendant Harold Irwin—the only defendant who is not a member of the Adams and Brock family—has held a variety of roles with ESI since 2004, including Treasurer, President, and most recently, Chief Executive Officer. He joined the board of directors in 2012 and was the ESOP trustee for the ESOP's entire existence. Based on his authority and actions with respect to the ESOP as a board member and trustee, Irwin was a fiduciary of the ESOP as defined by 29 U.S.C. § 1002(21)(A)(i) & (iii) and 29 U.S.C. § 1102.

### ERISA Overview

*29 U.S.C. § 1106(a)*

39. ERISA prohibits transactions between a plan and a party in interest, and transactions designed to benefit a party in interest. *See* 29 U.S.C. § 1106(a)(1)(A) & (D).

40. ERISA's prohibition on party in interest transactions is excused only if the fiduciaries and other participants to the transaction can prove that the plan received "adequate consideration" in the deal. *See* 29 U.S.C. § 1108(e)(1); *Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915, 935 (N.D.

Ill. 1998) ("[D]efendants bear the burden of proving that the transaction [redeeming ESOP shares] was fair and of benefit to the ESOP shareholders.").

41. "Adequate consideration" is defined as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." 29 U.S.C. § 1002(18); *see also Montgomery*, 39 F. Supp. 2d at 919 ("It must be shown that they arrived at their determination of adequate consideration in good faith by way of a prudent investigation and the application of sound business principles of evaluation.").

42. "Fair market value" is customarily considered to be "the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well informed about the asset and the market for such asset." *See* Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17637 (May 17, 1988).[3]

---

[3] Courts and practitioners customarily use this definition for guidance, although the regulation was never enacted. *See Brundle v. Wilmington Tr.*, 919 F.3d 763, 770 (4th Cir. 2019), as amended (Mar. 22, 2019) ("Department of Labor (DOL) has proposed, but never enacted, regulations" defining "adequate consideration." Nonetheless, "courts look to these regulations for guidance"); *Montgomery*, 39 F. Supp. 2d at 936–37 (citing unenacted regulation).

13

43.     An ESOP transaction is a prohibited transaction if it is designed to benefit a party in interest, as such a transaction constitutes the "use" of plan assets for the benefit of a party in interest, and the "indirect … transfer" of plan assets to the party in interest. *See Carter v. San Pasqual Fiduciary Trust Co.*, 2016 WL 6803768, at \*6 (C.D. Cal. Apr. 18, 2016) (company directors "caused … [the company] to redeem [the company's] stock held by the Plan" in order to sell that stock to a third party and thereby "indirectly transferred Plan assets to [themselves]" because the directors received other consideration from the third-party buyer); *Montgomery*, 39 F. Supp. 2d at 939 (company director that benefited indirectly from ESOP redemption was "clearly liable for having failed to sell the [ESOP's] stock [back to the company] for adequate consideration.").

### *29 U.S.C. § 1106(b)*

44.     ERISA also demands that fiduciaries "shall not" act for their own account or otherwise act adversely to a plan. *See* 29 U.S.C. § 1106(b).

45.     Specifically, a fiduciary "shall not" "deal with the assets of the plan" for their own interest or account (§ 1106(b)(1)); "act on behalf of a party whose interests are adverse to the interests of the plan" in a "transaction involving the plan" (§ 1106(b)(2)); or "receive any consideration for [their] own personal account from any party" in a "transaction involving the assets of the plan" (§ 1106(b)(3)).

14

46.     Just as with 1106(a), transactions prohibited by section 1106(b) are excused only if the fiduciary and other participants to the transaction can show that the plan received adequate consideration for the ESOP shares. 29 U.S.C. § 1108(e)(1).

47.     Section 1106(b) "should be read broadly in light of Congress' concern with the welfare of plan beneficiaries." *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984). Technical separation between a fiduciary's gain and the plan do not defeat evidence of a "link" between the two. *See McMaken v. GreatBanc Tr. Co.*, 2019 WL 1468157, at *8 (N.D. Ill. Apr. 3, 2019); *see also Stuart Park Assocs. Ltd. P'ship v. Ameritech Pension Tr.*, 51 F.3d 1319, 1325 (7th Cir. 1995) (a transaction with "intent" to "prompt[] or induce[]" a transaction involving the plan is not "independent" of the plan).

48.     A transfer of ESOP stock to benefit a board member is a fiduciary self-dealing transaction in violation of section 1106(b). *See Montgomery,* 39 F. Supp. 2d 915,935 ("The transaction in which [company] redeemed more than 95% of the outstanding shares involved self-dealing" where the "motive behind the transaction was the transfer of ownership to [company president and board member].")

*29 U.S.C. § 1104(a)(1)*

49.     A fiduciary is also liable for failing to act prudently and loyally with respect to any matter involving the fiduciary's duties to the plan. 29

15

U.S.C. § 1104(a)(1); *see also Brundle v. Wilmington Tr.,* 919 F.3d at 763, 773 (4th Cir. 2019) ("[A]n ESOP fiduciary is liable to the plan participants if it breached its fiduciary duties, i.e., failed to act 'solely in the interest of the participants,' with the care, skill, prudence, and diligence used by a 'prudent man acting in a like capacity.'").

50.     An independent trustee is liable if its "decision-making process [is] inadequate." *Id.* at 774. In order to satisfy its duty, a trustee must consider the motivations of the parties and "investigat[e] whether [such motivations] affected the ESOP's legality under ERISA." *Id.* at 778. A trustee must be "critical" of information supplied by company management if management has "financial incentives" in the deal. *Id.* at 775.

51.     If the transfer of a plan's stock will benefit company insiders, the "corporate insiders with fiduciary duties to the [plan] are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries." *Leigh*, 727 F.2d at 124–26.

52.     ERISA's fiduciary standard also applies to actions that "influenc[e] the outcome of [an independent advisor's] valuations" of company stock. *Perez v. Bruister*, 823 F.3d 250, 259–60 (5th Cir. 2016); *see also Howard v. Shay*, 100 F.3d 1484, 1490 (9th Cir. 1996) ("limiting the information conveyed to the

expert" in order to "sway the final valuation that will set the transaction price" was a fiduciary act).

*29 U.S.C. § 1105(a)*

53.    Fiduciaries may also be liable for their actions with respect to other fiduciaries. *See* 29 U.S.C. § 1105(a). Section 1105 requires a fiduciary to attempt to "prevent or remedy the breach" of another fiduciary. *In re Amsted Indus., Inc. Litig.*, 263 F. Supp. 2d 1126, 1130 (N.D. Ill. 2003). Company insider fiduciaries may be liable for "enabling a fiduciary breach by [the ESOP trustee]" by failing to provide true valuation information to the trustee. *See Placht v. Argent Tr. Co.*, 2022 WL 3226809, at *9 (N.D. Ill. Aug. 10, 2022).

**Defendants' Actions and Omissions Related to the SCEP Deal**

*The Fair Market Value of ESI's Stock*

54.    ESI finished 2020 with around $166 million in revenue, capping a 10-year run (since the founding of the ESOP) of consistent growth:

| Year | Revenue |
|------|---------|
| 2011 | $93 million |
| 2012 | $95 million |
| 2013 | $98 million |
| 2014 | $103 million |
| 2015 | $109 million |
| 2016 | $127 million |
| 2017 | $146 million |
| 2018 | $158 million |
| 2019 | $162 million |
| 2020 | $166 million |

17

55.   ESI also grew efficiently. ESI's annual revenue grew by more than 75% during the ESOP period with only a 33% increase in staff. ESI was ranked in the top 15 electrical products distributors nationwide in sales per employee.

56.   Based on its sales performance and efficiency, ESI should have been worth more than $100 million at the time of the SCEP deal. In an analogous transaction completed two weeks prior to the SCEP deal, Rumsey Electric (also an ESOP-owned company) sold to an outside buyer for $153 million on the strength of 2020 sales of around $230 million—a 0.67 ratio of value to revenue. Applying the same value to revenue ratio to ESI yields a valuation of $111 million. And ESI's sales per employee were higher than Rumsey's by more than 25%, warranting a premium for ESI shares based on ESI's efficiency.

57.   Publicly traded electrical products distribution companies have stable valuations. For example, WESCO is a publicly traded electrical productions distribution company that, like ESI, has strong international sales and a division focused on communications and video. During the six months leading to the sale of the ESOP's ESI stock, WESCO's value ranged between 0.60 and 0.75 of its annual revenue, with an average value to revenue ratio around the 0.67 mark reflected in the Rumsey sale.

58.   In determining the fair market value of a stock, a valuation "based on actual sales … comes as closely as may be to that fair market value, so often

18

judicially defined as the price which property will bring when offered by a willing seller to a willing buyer, neither being obligated to buy or sell." *Elmhurst Cemetery Co. of Joliet v. Comm'r of Internal Revenue*, 300 U.S. 37, 39 (1937). For publicly traded stocks the fair market value is the market price, but the same rule applies for privately held stocks such as ESI. *See Fitts' Est. v. Comm'r*, 237 F.2d 729, 731 (8th Cir. 1956) ("In determining the value of unlisted stocks, actual sales made in reasonable amounts at arm's length, in the normal course of business, … are the best criterion of market value.").

59.    Discovery will show that the fair market value of ESI at the time of the SCEP deal was more than $100 million.

*The Value Received by the ESOP for ESI Stock*

60.    Based on a value of more than $100 million, the ESOP should have received more than $10 million for its stake in the company, not $3.3 million. The value received by the ESOP was based on a valuation of ESI that was less than half its fair market value.

61.    The process used to determine the price that the ESOP would receive was not the same process used by Defendants to determine the value that family shareholders would receive.

62.    Rather than take the full value of the company as recognized by the consideration received by family shareholders (cash and equity in the recapitalized company) and apply that value to the ESOP's shares, Defendants

19

sold the ESOP's shares based on a separate valuation that was consistent with the ESOP's annual share valuation. This process for liquidating the ESOP's shares in the SCEP deal was deficient for multiple reasons. First, it did not reflect the actual valuation of the company by SCEP—the best evidence of the value of the ESOP's ESI shares. Second, the annual share valuation process was subject to Defendants' self-serving manipulations. An annual share valuation is used in the absence of a market sale to determine the price that retiring participants will receive if they elect to sell their shares back to the company. This process relied on subjective inputs from Defendants and was subject to Defendants' self-interest in keeping cash in the company and paying as little as possible to retiring participants.

63.    In contrast, the value received by family shareholders was based on a year-long search, valuation, bidding, and due diligence process. Adams Jr. spent a full year or more looking for an outside investor group who would be a good fit. The family engaged an investment banker to advise them on the value of the company and solicit offers from potential buyers. The family's bankers had access to the same market information that supported the Rumsey deal and that showed that comparable public companies were valued at around 67% of annual revenue. ESI's business profile and performance in particular were appealing to the market, and Defendants received multiple competing offers. Discovery will show that the consideration received by family shareholders in

the SCEP deal was based on a valuation of ESI consistent with its market value of more than $100 million.

64.    Defendants captured the additional value of the company for family shareholders through discounted equity in the recapitalized company. The cash price paid to all shareholders was only part of the deal. Adams Jr. and Sandra Brock became the largest independent shareholders in the recapitalized company concurrently with the transfer of discounted equity in the old company.[4] The cash plus the discount on new equity received by family shareholders was worth more on a per share basis than the cash received by the ESOP.

65.    Defendants breached their fiduciary duties under ERISA by failing to obtain equivalent value for the ESOP and capturing the difference in value for the family shareholders through discounted equity in the company.

66.    Each Defendant was involved in the SCEP deal in multiple ways and had knowledge of its terms. Each member of the family was a beneficiary of the transaction. As board members, each family member also had to approve the deal and the concurrent termination of the ESOP. Adams Jr. and Sandra Brock, as Plan Committee members, directed the trustee to sell the ESOP's

---

[4] On April 21, 2021, *Electrical Wholesaling*, reported "The Adams family remains a major investor in Electric Supply and George Adams, Jr. will remain on the company's board of directors." https://www.ewweb.com/news/mergers-acquisitions/article/21161955/electric-supply-of-tampa-partners-with-supply-chain-equity-partners (last visited May 1, 2023).

shares. And Irwin, as the trustee, executed the transfer. As the company's CEO and a member of the board, Irwin understood the context for the deal and how the terms were calculated. Each Defendant knew that the family had secured a more valuable deal from SCEP than the ESOP for their respective ESI shares.

### *Imprudent Management of Plan Assets*

67.    As described *supra*, the company made contributions to the ESOP in 2016, 2017, and 2018, but did not use those monies to purchase company stock. An ESOP is a form of retirement plan; indeed, participants cannot withdraw assets without penalty until after age 59-1/2. A prudent fiduciary would not have allowed nearly half the Plan's assets to sit in a cash account earning less than 0.1% per year for over 5 years. During the same period, prudently invested retirement assets earned an average of around 8% per year. By imprudently managing the funds held by the Plan that were not invested in company stock, Defendants breached their duty of prudence under 29 U.S.C. § 1104. *See Toomey v. DeMoulas Super Markets, Inc.*, 2020 WL 3412747, at *2–3 (D. Mass. Apr. 16, 2020).

### **Plan-Wide Relief Allegations**

68.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the ESOP to bring an action on behalf of the ESOP to obtain for the ESOP the

22

remedies provided by 29 U.S.C. § 1109(a). Plaintiff seeks recovery on behalf of the ESOP pursuant to this statutory provision.

69.     Plaintiff seeks recovery for injuries to the ESOP sustained as a result of prohibited transactions and fiduciary breaches and seeks equitable relief on behalf of the ESOP as a whole pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(3).

70.     Plaintiff is adequate to bring this derivative action on behalf of the ESOP, and his interest is aligned with other participants and beneficiaries. Plaintiff does not have any conflicts of interest with any participants or beneficiaries that would impair or impede his ability to pursue this action. Plaintiff has retained counsel experienced in ERISA litigation and intends to pursue this action vigorously on behalf of the ESOP.

## Class Action Allegations

71.     Plaintiff additionally and alternatively seeks certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

72.     Plaintiff asserts his claims on behalf of a class of participants and beneficiaries of the ESOP defined as follows:

> All participants and beneficiaries of the ESOP at the time that the ESOP was terminated, excluding any Defendant or other employee of ESI with fiduciary responsibility on behalf of the ESOP related to the SCEP deal.

23

73.   Numerosity: The Class is so numerous that joinder of all Class members is impracticable. The ESOP had around 180 participants.

74.   Typicality: Plaintiff's claims are typical of the Class members' claims. Like other Class members, Plaintiff was an ESOP participant and Plaintiff suffered injuries as a result of Defendants' violations of ERISA. Defendants treated Plaintiff consistently with other Class members with regard to the ESOP. Defendants' improper actions affected all ESOP participants similarly.

75.   Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the Class that he seeks to represent, and he has retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiff does not have any conflicts of interest with any Class members that would impair or impede his ability to represent such Class members.

76.   Commonality: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

   a.   Whether the Defendants were fiduciaries with respect to the ESOP and the scope of their fiduciary duties;

   b.   Whether the ESOP's fiduciaries failed to comply with the fiduciary standards of prudence and loyalty;

24

c. Whether Defendants were obligated to obtain adequate consideration for the ESOP's shares;

d. Whether Defendants obtained adequate consideration for the ESOP's shares;

e. Whether Defendants were parties in interest to the ESOP;

f. Whether the SCEP deal constituted one or more prohibited transactions;

g. Whether Defendants profited from their violations of ERISA;

h. The proper form of equitable and injunctive relief; and

i. The proper measure of monetary relief.

77. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

78. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as disgorgement of proceeds of the prohibited transactions and

allocation of the proceeds to participants, would be dispositive of the interests of all participants.

79. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Amended Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

80. Plaintiff and his undersigned counsel will provide notice to the class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

## Count I
### 29 U.S.C. § 1106(a)
*Against Adams Jr., Sandra Brock, and Irwin*

81.   Plaintiff incorporates Paragraphs 17–38 and 54–70 by reference.

82.   The sale of the ESOP's shares for less than fair value to benefit the family members (parties in interest) constituted one or more prohibited transactions in violation of 29 U.S.C. § 1106(a)(1)(A) & (D).

83.   Defendants Adams Jr. and Sandra Brock caused the prohibited transactions in their capacities as the ESOP fiduciaries responsible for directing the trustee to sell the ESOP's shares for less than fair value and by negotiating that the additional value of those shares be awarded to family shareholders in the form of discounted equity in the recapitalized company. Defendant Irwin also caused the prohibited transactions in his capacity as the ESOP fiduciary who executed the transfer of the ESOP's shares the deal.

84.   The circumstances around the transaction show that the consideration provided for the ESOP shares was inadequate and below-market value and that the transfer of the ESOP's share for below-market value was intended to benefit parties in interest.

85.   Defendant Irwin knew that the transaction was prohibited and the consideration inadequate but followed orders and completed the transaction without objection and without attempting to secure fair value for the ESOP. Defendant Irwin is therefore also jointly liable, pursuant to 29 U.S.C. §

27

1105(a), with Adams Jr. and Sandra Brock for their violations of 29 29 U.S.C. § 1106(a).

86.    Adams Jr., Sandra Brock, and Irwin caused losses to the ESOP resulting from the above-mentioned prohibited transactions and are liable to the ESOP for those losses. Adams Jr. and Sandra Brock profited from the above-mentioned prohibited transactions and are liable to the ESOP for their profits. They are also liable for appropriate equitable relief to be determined by the Court. Irwin is also jointly liable to the same extent as Adams Jr. and Sandra Brock.

**Count II**
**29 U.S.C. § 1106(b)**
*Against Adams Jr., Sandra Brock, and Irwin*

87.    Plaintiff incorporates Paragraphs 17–38 and 54–70 by reference.

88.    Defendants Adams Jr. and Sandra Brock dealt with ESOP assets for their own benefit in violation of 29 U.S.C. § 1106(b)(1) by directing the trustee to transfer ESOP shares for less than fair value for their personal benefit.

89.    Defendants Adams Jr. and Sandra Brock acted on behalf of interests adverse to the ESOP—the interests of the family—in transactions involving the ESOP in violation of 29 U.S.C. § 1106(b)(2) by directing the trustee to transfer ESOP shares for less than fair value for the benefit of the family.

28

90.    Defendants Adams Jr. and Sandra Brock received consideration from a party dealing with the ESOP in connection with a transaction involving the assets of the ESOP in violation of 29 U.S.C. § 1106(b)(3) by receiving additional value for their ESI shares in the form of discounted equity consideration in connection with the transfer of the ESOP's shares for the less than fair value.

91.    The circumstances around the transaction show that the consideration provided for the ESOP shares was inadequate and below-market value and that the transfer of the ESOP's share for below-market value was intended to benefit fiduciaries of the ESOP.

92.    Defendant Irwin knew that the transaction was prohibited and the consideration inadequate but followed orders and completed the transaction without objection and without attempting to secure fair value for the ESOP. Defendant Irwin is therefore also jointly liable, pursuant to 29 U.S.C. § 1105(a), with Adams Jr. and Sandra Brock for their violations of § 1106(b).

93.    Adams Jr. and Sandra Brock caused losses to the ESOP resulting from the above-mentioned prohibited transactions and are liable to the ESOP for those losses. They also profited from the above-mentioned prohibited transactions and are liable to the ESOP for their profits. They are also liable for appropriate equitable relief to be determined by the Court. Irwin is also jointly liable to the same extent as the family Defendants.

29

## Count III
## 29 U.S.C. § 1104(a)(1)
*Against All Defendants*

94.   Plaintiff incorporates Paragraphs 17–38 and 54–70 by reference.

95.   Defendants Adams Jr., Sandra Brock, and Irwin, as Plan Committee members and ESOP trustee, were responsible for determining a fair price for the ESOP's shares. Adams Jr., Sandra Brock, and Irwin failed to act solely in the interest of ESOP participants in this process. Instead, they subverted the valuation process to prevent the shares from being appraised based on accurate, complete, and up-to-date information used in the SCEP deal, and to prevent the ESOP from receiving the same value as family shareholders. Defendants Adams Jr., Sandra Brock, and Harold Irwin therefore failed to comply with the fiduciary standard of care and duty of loyalty pursuant to 29 U.S.C. § 1104(a)(1).

96.   As board members, all Defendants had a fiduciary duty to monitor the appointed fiduciaries: the Plan Committee members and trustee. Shaker Brock and Pound were the only two board members who were not also fiduciary appointees. Shaker Brock and Pound had a duty to monitor the actions of Adams Jr., Sandra Brock, and Irwin and ensure that they discharged their fiduciary duties in compliance with ERISA. In the process leading to the ESOP SCEP deal, Shaker Brock and Pound learned, through their own participation in the deal as ESI shareholders and as board members responsible for

30

terminating the ESOP, that Adams Jr., Sandra Brock, and Irwin engineered an unfair deal for the ESOP. Shaker Brock and Pound had a duty to intervene on behalf of the ESOP and attempt to remove their parents and Irwin from their positions to prevent them from completing the unfair transaction. Shaker Brock and Pound instead turned a blind eye because it benefited the family, in breach of their fiduciary duties to the ESOP.

97.    Defendants also breached their fiduciary duty of prudence by allowing the Plan's assets to sit in a cash equivalent account earning less than 0.1% interest for over 5 years. This demonstrates a failure to act in accordance with the investment goals and time horizon of the Plan, and evidences a failure to exercise sufficient care or due diligence in monitoring the Plan's investments and investigating potential alternatives that would align with participants' financial objectives.

98.    Had Defendants performed their fiduciary duties in the prudent and loyal manner required by ERISA, Plaintiff and other ESOP participants would have received additional benefits.

99.    Defendant Irwin knew that the family Defendants breached their fiduciary duties but followed orders and completed the SCEP deal without objection and without attempting to secure fair value for the ESOP. Defendant Irwin is therefore also jointly liable, pursuant to 29 U.S.C. § 1105(a), with

31

Adams Jr., Sandra Brock, Shaker Brock, and Pound for their violations of 29 U.S.C. § 1104(a)(1).

100.    The family Defendants caused losses to the ESOP resulting from the above-mentioned fiduciary breaches and are liable to the ESOP for those losses. They also profited from the above-mentioned fiduciary breaches and are liable to the ESOP for their profits. They are also liable for appropriate equitable relief to be determined by the Court. Irwin is also jointly liable to the same extent as the family Defendants.

## PRAYER FOR RELIEF

101.    Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

> A.    Certify Plaintiff's authority to seek plan-wide relief on behalf of the ESOP pursuant to 29 U.S.C. § 1132(a)(2);
>
> B.    Alternatively, certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify Plaintiff as the class representative, and certify his counsel as class counsel;
>
> C.    Order Defendants to make good to the ESOP all losses resulting from their violations of ERISA;
>
> D.    Order the family member Defendants to disgorge all profits received through use of the assets of the ESOP;
>
> E.    Impose a constructive trust or equitable lien or surcharge with respect to, and an accounting of, all proceeds of fiduciary breaches and prohibited transactions received by the family Defendants;
>
> F.    Appoint an independent trustee of the ESOP to oversee the allocation of losses, profits, and proceeds recovered on

32

behalf of the ESOP to ESOP participants, consistent with the terms of the ESOP and ERISA;

G.    Approve a fair and equitable plan of allocation of any losses, profits, or proceeds recovered on behalf of the ESOP;

H.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

I.    Award prejudgment and post-judgment interest; and

J.    Award such other and further relief as the Court deems just and equitable.

DATED: May 4, 2023                              Respectfully Submitted,

/s/ *Marc R. Edelman*                           /s/ *Carl F. Engstrom*
**MARC R. EDELMAN**                             **CARL F. ENGSTROM** (*admitted*
Fla. Bar No. 0096342                            *pro hac vice*)
**MORGAN & MORGAN, P.A.**                       Minn. Bar No. 0396298
201 N. Franklin Street, Suite 700               **MARK E. THOMSON** (*admitted*
Tampa, FL 33602                                 *pro hac vice*)
Telephone 813-223-5505                          Minn. Bar No. 0398260
MEdelman@forthepeople.com                       **ENGSTROM LEE**
                                                729 N Washington Ave, Suite 600
/s/ *Brandon J. Hill*                           Minneapolis, MN 55401
**BRANDON J. HILL**                             Telephone: 612-305-8349
Florida Bar Number: 0037061                     cengstrom@engstromlee.com
**LUIS A. CABASSA**                             mthomson@engstromlee.com
Florida Bar Number: 053643
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
**WENZEL FENTON CABASSA**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
bhill@wfclaw.com
lcabassa@wfclaw.com
aheystek@wfclaw.com

*Attorneys for Plaintiff*

33