**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| Robert Cothran, as the representative of a class of similarly situated persons, and on behalf of the Electric Supply Employee Stock Ownership Plan, | Case No. 8:23-cv-00518-CEH-CPT |
|      Plaintiff, | |
| v. | |
| George M. Adams Jr., Sandra Brock, Shaker Brock, Kelly A. Pound, and Harold Irwin, | |
|      Defendants. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff Robert Cothran respectfully requests that the Court approve the proposed settlement with George M. Adams Jr., Sandra Brock, Shaker Brock, Kelly A. Pound, and Harold Irwin ("Defendants")—which is described in detail in the Class Action Settlement Agreement and exhibits thereto ("Settlement Agreement"), attached as Exhibit A to the Declaration of Mark Thomson and incorporated herein by reference—and enter the proposed order granting preliminary approval of the settlement, which is attached as Exhibit 3 to the Settlement Agreement.

The proposed preliminary approval order approves the form of notice to be given to the Settlement Class, establishes a schedule and process for the submission of any objections from the Settlement Class, and provides for a fairness hearing to be

held by the Court. The parties anticipate requesting final approval of the Settlement in advance of the fairness hearing.

## MEMORANDUM OF LAW

### INTRODUCTION

Plaintiff Robert Cothran submits this Memorandum in support of his Motion for Preliminary Approval of his class action settlement ("Settlement" or "Settlement Agreement") with George M. Adams Jr., Sandra Brock, Shaker Brock, Kelly A. Pound, and Harold Irwin ("Defendants") relating to the management of the Electric Supply Employee Stock Ownership Plan ("Plan" or "ESOP").

Under the terms of the proposed Settlement, a Gross Settlement Amount of $1,100,000.00 will be paid to resolve the claims of Settlement Class Members who participated in the Plan during the subject period. This is a significant recovery for the Class in relation to the investment mismanagement claim that was alleged, and falls well within the range of negotiated settlements in similar ERISA cases.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that the proposed Settlement Notice can be sent to the Settlement Class. Among other things:

- The Settlement was negotiated at arm's length by experienced and capable counsel following review of substantial discovery;
- The proposed Settlement Class is consistent with settlement classes approved in other ERISA cases;
- The Settlement provides for significant monetary relief that compares favorably to settlements in other cases;
- The Settlement provides class members with the option of submitting a Rollover Form or otherwise receiving their distribution by check;

- The proposed Settlement Notice provides fulsome information to Class Members about the Settlement, and will be distributed via first-class mail; and
- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement and appear at the final approval hearing.

Accordingly, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order submitted herewith. Defendants do not oppose the motion as parties to the Settlement Agreement.

## BACKGROUND

### I.   THE PLEADINGS AND MOTION TO DISMISS

On March 8, 2023, the Class Representative, Robert Cothran, filed a Class Action Complaint (Dkt. 1) asserting two primary claims against Defendants under ERISA: (1) failure to obtain adequate consideration in the sale of the Plan's shares, and (2) imprudent investment of the Plan's assets that were not invested in company stock. On May 4, 2023, an Amended Complaint was filed. Dkt. 23. On June 8, 2023, Defendants filed a motion to dismiss Plaintiff's claims that Defendants failed to obtain adequate consideration in the sale of the Plan's shares. Dkt. 36.[1] Plaintiff filed a response to Defendants' motion on June 29, 2023 (Dkt. 43), to which Defendants replied on July 21, 2023 (Dkt. 48). Defendants' motion to dismiss remained pending at the time the Parties filed a Notice of Settlement on December 11, 2023. Dkt. 51.

---

[1] Defendants did not move to dismiss Plaintiff's claim that Defendants imprudently invested the Plan's assets that were not invested in company stock.

## II.    DISCOVERY AND SETTLEMENT

While Defendants' motion to dismiss was pending, Plaintiff commenced discovery. On August 23, 2023, Plaintiff served on Defendants 63 Requests for Production of Documents. *Thomson Decl. ¶ 11*. Plaintiff also served document subpoenas on multiple third parties during this period. *Id.* Plaintiffs received more than 14,000 pages in response to these discovery requests. *Id.*

Following review of these materials, the Parties engaged in settlement discussions over the course of several months. *Id. ¶ 12*. After extensive arm's length negotiations, the parties reached a settlement in principle, and then drafted the comprehensive Settlement Agreement that is the subject of this motion. *Id.*

## III.   OVERVIEW OF SETTLEMENT TERMS

### A.    Settlement Class.

The Settlement Agreement calls for certification of the following Settlement Class:

> All participants of the ESOP who had an account balance greater than zero at any time between January 1, 2016 and April 14, 2021, excluding Defendants.

*Settlement Agreement ¶ 1.44.* Based on the information provided by Defendants, there are 197 Settlement Class Members. *Thomson Decl. ¶ 3.*

### B.    Relief.

Under the terms of the Settlement, a Gross Settlement Amount of $1.1 million will be paid to resolve the claims of the Class Members. *Settlement Agreement ¶ 1.23.* After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and

General Release Compensation approved by the Court, the Net Settlement Amount will be distributed to Class Members in accordance with the Plan of Allocation in the Settlement. *Id. ¶¶ 1.26, 5.1.*

Under the Plan of Allocation, the Settlement Administrator[2] shall determine a Settlement Allocation Score for each Settlement Class Member. *Settlement Agreement ¶ 5.1.* For purposes of making this determination, the Settlement Allocation Score shall be calculated based on each Settlement Class Member's average yearly balance in the Plan's Other Investments Account during the Class Period. *Id.*

Settlement Class Members may elect to have their share of the Net Settlement Amount rolled over into an individual retirement account or other eligible employer plan by submitting a Rollover Form. *Id. ¶ 5.2.* Any Settlement Class Members who do not submit a Rollover Form will receive their share via check. *Id.* Under no circumstances will any monies revert to Defendants. *Id. ¶ 5.5.* The aggregate balance of any checks that are uncashed after 120 days will be paid to the Electric Supply 401(k) Retirement Savings Plan for the purpose of defraying administrative fees and expenses. *Id.*

---

[2] The proposed Settlement Administrator is Analytics Consulting LLC ("Analytics"). *See Settlement Agreement ¶ 1.41.* Analytics has extensive experience administering ERISA settlements and other class action settlements, *see Thomson Decl. ¶ 23 & Ex. C*, including ERISA class action settlements in Florida and elsewhere the 11th Circuit. *See, e.g., Clark v. Oasis Outsourcing Holdings, Inc.*, No. 9:18-cv-81101-RLR, Dkt. 11 at 3 (S.D. Fla. Aug. 21, 2018); *Dean v. Cumulus Media, Inc.*, No. 1:22-cv-04956-TWT, Dkt. 16 at 8 (N.D. Ga. Feb. 16, 2023); *Kinder v. Koch Indus.*, Inc., No. 1:20-CV-02973-MHC, 2021 WL 3360130, at *2 (N.D. Ga. July 30, 2021).

**C.      Release of Claims.**

In exchange for this relief, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties") from all claims arising prior to the end of the Class Period:

- That (a) were asserted or could have been asserted in the Action (including any assertion set forth in the Amended Complaint or the Complaint), or (b) that are based on generally the same factual predicate as any of the claims in the Amended Complaint;

- That would be barred by *res judicata* based on entry by the Court of the Final Approval Order;

- That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Net Settlement Amount pursuant to the Plan of Allocation; or

- That relate to the approval by the Independent Fiduciary of the Settlement Agreement.

*See id. ¶¶ 1.35.* The Released Claims do not include (i) claims to enforce the Settlement Agreement, (ii) individual claims for denial of benefits from the Plan. *Id.*

**D.      Settlement Notice and Settlement Administration.**

Class Members will be sent a direct notice of the settlement ("Settlement Notice") via first-class U.S. Mail. *Id. ¶ 3.2 & Ex. 1.* The Settlement Notice will include a Rollover Form enabling Settlement Class Members to make the rollover election described above. *Id. ¶ 3.2 & Ex. 2.* The Settlement Administrator will also establish a Settlement Website on which it will post the Amended Complaint, Settlement Agreement and Exhibits thereto, Settlement Notice, Rollover Form, Preliminary Approval Order and any other Court orders related to the Settlement, and Plaintiff's

Motion for Attorneys' Fees and Costs, Administrative Expenses, and General Release Compensation once it is filed. *Id. ¶ 3.3.* Further, the Settlement Administrator will establish a toll-free telephone line that will provide callers the option of speaking with a live operator if they have questions. *Id.*

### E.    Attorneys' Fees and Costs, Administrative Expenses, and General Release Compensation.

The Settlement Agreement requires that Class Counsel file their motion for attorneys' fees at least 30 days before the deadline for objections to the proposed Settlement. *Id. ¶ 6.1.* As explained in the Settlement Notice, Class Counsel will seek no more than one-third of the Gross Settlement Amount ($366,666.66) in attorneys' fees. *Id. ¶ 1.4 & Ex. 1.* In addition, the Settlement Agreement provides for recovery of Attorneys' Costs, Administrative Expenses, and General Release Compensation subject to Court approval. *Id. ¶ 6.1.*

### F.    Review by Independent Fiduciary.

As required under ERISA, Defendants will retain an Independent Fiduciary to review and authorize the Settlement on behalf of the Plans. *Id. ¶ 2.2*; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830. The Independent Fiduciary will issue its report prior to the Fairness Hearing so that the Court may consider it. *Settlement Agreement ¶ 2.2.*

## ARGUMENT

### I.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

As part of the Settlement, the Parties request that the Court certify the proposed Settlement Class, defined in Section III.A above, for purposes of settlement only. Certification of a class is required where the plaintiff demonstrates that the class is adequately defined and clearly ascertainable, and then demonstrates the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012); Fed. R. Civ. P. 23. In ERISA actions such as this, the criteria under Rule 23 are generally satisfied. *See Pizarro v. Home Depot, Inc.*, No. 1:18-CV-01566-WMR, 2020 WL 6939810, at *4 (N.D. Ga. Sept. 21, 2020) ("An ERISA action is generally the type of action that satisfies those criteria."). This case is no exception.

### A.   The Proposed Settlement Class is Adequately Defined and Clearly Ascertainable.

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" *Little*, 691 F.3d at 1304 (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970). Here, the Plan's recordkeeper will provide to the Settlement Administrator a list of all the Plan's participants. *Settlement Agreement ¶ 3.2.* The Settlement Class is thus not only capable of being ascertained—it has already been ascertained. *Gamache v. Hogue*, 338 F.R.D. 275, 285 (M.D. Ga. 2021) (finding ascertainability "given that ERISA requires

Defendants to maintain records of the ESOP's participants").

### B.    The Proposed Settlement Class Satisfies Rule 23(a).

"If the plaintiff's proposed class is adequately defined and clearly ascertainable, the plaintiff must then establish the four requirements listed in Federal Rule of Civil Procedure 23(a)." *Little*, 691 F.3d at 1304. Rule 23(a) sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Each of these requirements is met here.

*Numerosity.* As noted above, there are 197 Class Members. *See supra* at 4. This exceeds the threshold for numerosity. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) ("Generally, 'less than twenty-one is inadequate, more than forty adequate.'") (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

*Commonality.* The commonality requirement has been described as a "low hurdle," *see Pizarro*, 2020 WL 6939810, at *7 (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009)), and is routinely satisfied in ERISA cases such as this. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries."). "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized

course of conduct that affects all class members." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011).

Here, commonality is satisfied because Defendants' alleged violations of ERISA are the same for all Settlement Class Members. Common issues in this case include: how Defendants selected and monitored the Plan's non-company stock investments; whether Defendants' processes were prudent; and the appropriate relief for Defendants' alleged violations of ERISA. The evidence necessary to resolve these issues is the same. Classes consisting of ERISA plan participants are routinely certified in this circuit. *E.g.*, *In re Suntrust Banks, Inc. ERISA Litig.*, No. 1:08-CV-03384-RWS, 2016 WL 4377131, at *6 (N.D. Ga. Aug. 17, 2016) (finding breach of fiduciary duty satisfied the commonality requirement). Thus, the commonality requirement is satisfied.

*Typicality.* The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "This requirement is satisfied where the named plaintiffs' claims 'arise from the same event or pattern or practice and are based on the same legal theory' as the claims of the class." *Belton v. Georgia*, No. 1:10-CV-0583-RWS, 2011 WL 925565, at *5 (N.D. Ga. Mar. 14, 2011) (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

In this context, the typicality requirement is satisfied if the class representative is "invested in the same funds as the class members," was a participant in the same plan, and was subject to the same challenged investment. *Spano v. Boeing Co.*, 633

10

F.3d 574, 586 (7th Cir. 2011). Such is the case here. For the same reasons that Plaintiff's claims are common to all Settlement Class Members, they are also typical. Plaintiff, like other Settlement Class Members, (1) seeks relief for the same losses arising from allegedly imprudent investment, (2) caused by the same alleged breaches of fiduciary duties, (3) affecting the same Plan and funds. *See id.* at 586-87, 589-90; *see also Gamache*, 338 F.R.D. at 288 ("Plaintiffs have met their burden as to typicality. The members' claims are based on the same events and legal theories: breach of fiduciary duties and monitoring the [plan].")

*Adequacy.* Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. "The adequacy-of-representation requirement is satisfied when (i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the case." *In re Blue Cross*, 2020 WL 8256366, at *10 (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).

Plaintiff Robert Cothran is an adequate class representative. He has been actively engaged in the litigation and provided documents to counsel used to draft the Complaint and the Amended Complaint. *Cothran Decl. ¶ 3*; *Thomson Decl. ¶ 22*. Second, Plaintiff has no conflicts with the Class. *Cothran Decl. ¶ 2*. He asserts claims on the Plan's behalf and requests no separate individual relief. The adequacy requirement of Rule 23(a)(4) is met.

11

Plaintiff's Counsel in this case are well-qualified as described in detail in the Declarations of Mark Thomson, Marc Edelman, and Brandon Hill. Engstrom Lee's lawyers are experienced class action ERISA litigators. *See Thomson Decl. ¶¶ 14-21.* Morgan & Morgan and Wenzel Fenton Cabassa also have a lengthy history of successfully litigating class actions. *Edelman Declaration ¶ 5; Hill Declaration ¶ 6.* Not only do these attorneys have extensive experience litigating class actions, including numerous class actions concerning the prudence of retirement plan investment options, they have worked diligently to litigate the claims here. *Thomson Decl. ¶¶ 9-13.* Plaintiff's Counsel have brought sufficient skill and resources to litigate this case. Plaintiff's Counsel satisfy Rule 23(a)(4) and 23(g).

### C.   The Proposed Settlement Class Satisfies Rule 23(b)(1).

In addition to meeting the requirements of Rule 23(a), the proposed class also satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B)   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). The claims here plainly satisfy this test because they are brought derivatively on behalf of the Plan under ERISA, see 29 U.S.C. §§ 1109 and 1132(a)(2), and the outcome will necessarily affect the participants in the Plan and the Plan's fiduciaries. For this reason, "[c]ourts in the Eleventh Circuit . . . have

found certification under Rule 23(b)(1) particularly appropriate in an ERISA

fiduciary breach case, like the case here." *Pizarro*, 2020 WL 6939810, at *11

(collecting cases). Indeed, "ERISA litigation of this nature presents a paradigmatic

example of a (b)(1) class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 453.[3]

## II.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Standards for Preliminary Approval.

Rule 23(e) provides that a class action cannot be settled without court

approval. Review of a proposed class action settlement for approval generally

proceeds in two stages: (1) preliminary approval and notice to class members of the

proposed settlement; and (2) final approval following a fairness hearing in which the

Court determines whether the proposed settlement is "fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e)(2).

Before a court approves a proposed settlement, notice must be provided to the

class. Fed. R. Civ. P. 23(e)(1). The parties must provide the court with information

sufficient to enable the court to determine whether to give such notice of the proposal

to the class. *Id.* The court examines the information provided by the parties against a

number of factors to determine whether notice should be given. *Id.*

Rule 23, as amended in 2018, provides direction to federal courts considering

whether to grant preliminary approval of a class action settlement. Fed. R. Civ. P.

---

[3] *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (noting that a breach of trust action is a "classic example" of a Rule 23(b)(1) class).

23(e), Committee Notes (when weighing preliminary approval, court should decide whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."). Rule 23(e)(2) specifies the following factors the court should consider at the final approval stage in determining whether a settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)    the costs, risks, and delay of trial and appeal;
>> (ii)   the effectiveness of any proposed method of distributing relief to the class;
>> (iii)  the terms of any proposed award of attorney's fees; and
>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-01831, 2019 WL 9171207, at *9 (N.D. Ala. Aug. 1, 2019).

In tandem with Rule 23(e), courts within the Eleventh Circuit evaluate class action settlements under six factors outlined in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984): (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *Parsons v. Brighthouse Networks, LLC*, No. 09-267, 2015 WL 13629647, *2 (N.D. Ala. Feb. 5,

2015). Plaintiff addresses each of these factors to the extent they are applicable. Because many *Bennett* factors overlap with those of Rule 23(e)(2),[4] Plaintiff addresses them together. *See In re Blue Cross*, 2020 WL 8256366, at *15 (citation omitted).

Whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986. The question is "whether [the proposed settlement] is within the range of fair, reasonable and adequate." *Exum v. Nat'l Tire & Battery*, 2020 WL 1670997, at *7 (S.D. Fla. Apr. 6, 2020) (citing MANUAL FOR COMPLEX LITIG. § 30.41). "Where [ ] the proposed settlement is the result of serious, arms-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, achieves favorable outcomes for plaintiffs and the class, and does not grant preferential treatment to plaintiffs or other segments of the class, courts generally grant approval." *Id.*

### B.    The Class Representative and Class Counsel Adequately Represented the Class.

For the same reasons that the proposed Class Representative and Plaintiff's Counsel satisfy the adequacy of representation requirements under Rule 23(a)(4), they have also adequately represented the proposed Class under Rule 23(e)(2)(A).

---

[4] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv), and since Notice has not yet been sent, there has been no opposition to the settlement (*Bennett* factor #5).

The Proposed Class Representative has been actively engaged in the litigation, has no conflicts with the Class, and seeks no individual relief. *See supra* at 11. And as detailed above, Plaintiff's Counsel is well-qualified, have extensive experience litigating ERISA class actions, and have worked diligently to litigate the claims here including contesting a motion to dismiss. *See supra* at 12.

### C.   The Settlement Was Negotiated at Arm's Length by Experienced Counsel.

Rule 23(e)(2)(B) requires the court to determine whether a proposed settlement "was negotiated at arm's length." Relatedly, the *Bennett* factors require the court to rule out the possibility of fraud or collusion behind the settlement. *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

The Settlement was preceded by hard-fought motion practice and a substantial exchange of discovery. *See supra* at 3-4. The parties then entered settlement negotiations with an understanding of where the strengths and weaknesses of their arguments lay, and both sides engaged in extensive bargaining over months of discussions. *See Thomson Decl. ¶¶ 9-13*. Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement . . . counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005). Nor is there any suggestion of fraud or collusion in this case, where the settlement "is the result of non-collusive,

arm's length negotiations among experienced counsel informed of and familiar with the legal and factual issues of the action." *McWhorter*, 2019 WL 9171207, at *9.

### D.    The Settlement Provides Significant Relief to Class Members.

Rule 23(e)(2)(C)(i), and the first and fourth *Bennett* factors, require the court to consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation.

The Parties had different views about Defendants' actions, their potential liability, and the likely outcome of the litigation. Plaintiff alleged that Defendants' selection and retention of the Plan's non-company stock investments was imprudent. Defendants denied these allegations and defended their actions with respect to the Plan, arguing that their investment selections were prudent and that Plaintiff's proposed alternatives were inappropriate.

If the Action were to proceed, Plaintiff would have to overcome these and other defenses and arguments. These fact-intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have created uncertainty as to the ultimate outcome of the litigation. *See Swaney*, 2020 WL 3064945, at *4 ("Because 'the outcome on class certification and the ultimate outcome on the merits was uncertain for both parties,' a settlement was reached and here that is appropriate.") (quoting *Parsons*, 2015 WL 13629647, at *2). Trial would have required Plaintiff's Counsel to conduct further discovery and prepare and argue motions for class certification and summary judgment, presenting potential risks. *Pledger v. Reliance Tr. Co.* ("*Pledger I*"), No. 1:15-CV-4444-MHC, 2019 WL 10886802,

at *24-25 (N.D. Ga. Mar. 28, 2019) (granting summary judgment in defendants'
favor on ERISA claim involving retention of allegedly imprudent investments). Even
if Plaintiff prevailed at trial on liability, issues would have remained regarding proof
of loss. *See, e.g.*, *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134-35 (D. Colo.
2020) (awarding only a fraction of the damages sought in ERISA class action).

   None of this is to say that Plaintiff lacked confidence in his claims. However,
there is little doubt that continuing the litigation would have resulted in complex and
costly proceedings, which would have significantly delayed relief to Class Members
even if Plaintiff ultimately prevailed. ERISA 401(k) cases such as this "often lead[] to
lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn.
July 13, 2015). Indeed, these cases can extend for a decade before final resolution,
sometimes going through multiple appeals.[5] Given the risks, cost, and delay of
further litigation, it was reasonable and appropriate for Plaintiff to reach a settlement
on the terms that were negotiated. *See Henderson*, 2020 WL 9848975, at *6 ("The
guaranteed recovery under the settlement outweighs the possibility of any future
relief after such continued and lengthy litigation."); *In re the Home Depot, Inc.,
Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *6 ("[I]t is unclear whether
future recovery at trial could achieve more than the relief made available in the

---

[5] *See, e.g., See Fuller v. SunTrust Banks, Inc.*, No. 1:11-cv-00784, Dkt. 295-1 at 10-11 (N.D. Ga. June 5, 2020) ("Plaintiffs and their counsel persisted despite the denial of the administrative claim, the appeal of that claim, dismissal of two of the constituent cases, and one unsuccessful appeal to the Eleventh Circuit."); *Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (recounting lengthy procedural history of case that was initially filed in 2006, and remanding to district court a second time); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007).

Settlement. The early settlement of this case benefits the Settlement Class and weighs strongly in favor of final approval."); *Bennett v. Behring Corp.*, 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984).

> **E.    The Stage of Proceedings and Development of the Factual Record.**

The sixth *Bennett* factor asks the court to consider whether "the case settled at a stage of the proceedings where class counsel had sufficient knowledge of the law and facts to fairly weigh the benefits of the settlement against the potential risk of continued litigation." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *10 (N.D. Ga. Mar. 17, 2020).

Substantial document discovery was completed and the parties fully briefed Defendants' motions to dismiss, which was pending at the time the Parties agreed to settle. *Supra* at 3-4. Counsel for Plaintiff have litigated numerous ERISA class actions presenting similar issues, settling many while taking others to trial. *Thomson Decl. ¶¶ 16-19*. As such, Plaintiff's Counsel is intimately familiar with Plan fiduciaries' responsibilities under ERISA. Similarly, Defendants' counsel is familiar with the documents and information Plaintiff's Counsel requested, which allowed the Parties to fully and fairly assess the allegations and strengths and weaknesses of their respective positions at an early stage, to the benefit of the Class. "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable

amount of discovery should be required to make these determinations." *In re Blue Cross*, 2020 WL 8256366, at *16 (citation omitted).

Having obtained the necessary information to assess the strengths and weaknesses of their respective positions and with best interests of the Plan in mind, the Parties reached a fair and equitable settlement agreement.

**F.    The Benefits Provided By the Settlement Are Fair, Adequate, and Reasonable When Compared to the Range of Possible Recovery.**

The second and third *Bennett* factors are "easily combined and normally considered in concert." *Camp v. City of Pelham*, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014). "The [c]ourt's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation[ ] but to evaluate the proposed settlement in its totality." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

The relief provided by the Settlement is adequate. After evaluating substantial discovery, Plaintiff concluded that settlement negotiations should concern the claim that Defendants imprudently invested the Plan's assets that were not invested in company stock, and not the claim that Defendants failed to obtain adequate consideration in the sale of the Plan's shares. *Thomson Decl. ¶ 12.*  The $1.1 million Gross Settlement Amount represents approximately 40% to 60% of the losses caused by Defendants' alleged mismanagement of the Plan's non-company stock investments, depending on the benchmark used for purposes of calculating

damages.[6] *Id.* ¶ *13.* This compares favorably with recoveries in other ERISA class actions. *See, e.g.*, *Karpik*, 2021 WL 757123, at *8 (approving $10.5 million settlement that represented 30% of estimated damages, including damages due to imprudent investment selection); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving $24 million settlement that represented 19% of estimated damages, including damages due to imprudent investment selection); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858 (C.D. Cal. July 30, 2018) (approving $12 million settlement that represented 25% of estimated damages due to imprudent investment selection ); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million settlement in ERISA case that included imprudent investment selection claim, where that amount represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *accord In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *Bennett*, 737 F.2d at 986-87 & n.9 (approving a settlement representing 5.6% of claims with maximum potential recovery); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ("[S]tanding alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims.").

---

[6] Plaintiff used two models to calculate the allegedly losses. *See id.* ¶ *13.* The first model was based on the returns of a microcap index fund. *Id.* The second model was based on the returns of an S&P 500 index fund. *Id.*

**G.      The Effectiveness of the Proposed Method of Distributing Relief.**

Rule 23(e)(2)(C)(ii), examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. As noted above, Class Members will receive an automatic payment (without the need to submit a claim form), either in the form of a check or in the form of a rollover to another qualified retirement account if they so elect and provide the necessary rollover information. *Settlement Agreement ¶ 5.2.* Providing a rollover option allows Class Members to avoid negative tax consequences, and is consistent with other ERISA class action settlements that have received court approval. *See, e.g.,* *Dean v. Cumulus Media, Inc.*, No. 1:22-cv-04956-TWT, Dkt. 16 at 5 (N.D. Ga. Feb. 16, 2023) ("The method of distributing the Class Settlement Amount is efficient, relying on Defendants' records and requiring no filing of claims."); *Pledger v. Reliance Tr. Co.*, 2021 WL 2253497, at *4 (N.D. Ga. Mar. 8, 2021) ("*Pledger II*") (approving similar distribution method in which former participant class members were given the option of receiving a check or rollover, but were required to submit a claim form to receive payment).

**H.      The Terms of the Proposed Award of Attorneys' Fees and Costs, Administrative Expenses, and General Release Compensation.**

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. Plaintiff's Counsel will file an application seeking an award of attorneys' fees in an amount not exceeding $366,666.66 (1/3 of the Settlement Amount), plus reimbursement of litigation expenses. *Supra* at 7; *Settlement*

*Agreement ¶ 1.4.* One-third is the percentage typically awarded in complex ERISA cases such as this. See *Kruger v. Novant Health*, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) ("[C]ourts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this matter"); *Krueger*, 2015 WL 4246879, at *2 ("In such cases, courts have consistently awarded one-third contingent fees."); *Karpik*, 2021 WL 757123, at *7 (approving one-third fee in ERISA class action); *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (same); *Sims*, 2019 WL 1995314, at *2 (M.D.N.C. May 6, 2019) (same); *Clark v. Oasis Outsourcing Holdings Inc.*, No. 18-81101, Dkt. 23 at ¶ 1 (S.D. Fla. Dec. 20, 2018) (same). Plaintiff's counsel will also seek reimbursement of litigation expenses, administrative expenses, and General Release Compensation. *Settlement Agreement ¶ 6.1.*

## I.    The Proposal Treats Class Members Equitably Relative to Each Other.

Under Rule 23(e)(2)(D), the Court must consider whether the proposal treats class members equitably relative to each other. The Settlement proceeds will be distributed to Class Members on a *pro rata* basis based on a common allocation formula. *See Settlement Agreement ¶ 5.1.* According to that process, individual Class Members will receive *pro rata* distributions based on each Class Member's percentage of the assets invested in the Plan's Other Investments Account. Courts in this Circuit have found such pro rata distributions appropriate. *McWhorter*, 2019 WL 9171207, at

*12; *Cifuentes v. Regions Bank*, No. 11-23455, 2014 WL 1153772, at *3 (S.D. Fla. Mar. 20, 2014).

> ### J.     The Court Should Approve the Notice Plan and Schedule a Fairness Hearing.

In addition to reviewing the substance of the proposed Settlement, the Court must ensure that notice is sent in a reasonable manner to all Class Members who would be bound by the Settlement. *See* Fed. R. Civ. P. 23(e)(1). The "best notice practicable" under Rule 23 specifically includes "individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Agreement provides that the Settlement Administrator will provide direct notice of the Settlement to the Settlement Class via first-class mail. *See Settlement Agreement ¶ 3.2.* This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Moreover, the content of the Notice is also reasonable. The Notice includes information regarding: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the Settlement; (4) the process for submitting Rollover Forms; (5) Class Members' right to object to the Settlement and the deadline for doing so; (6) the class release; (7) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (8) the amount of the proposed Class Representatives' Compensation; (9) the date, time, and location of the Fairness Hearing; and (10) Class Members' right to appear at the final approval hearing. *Id.*

*Ex. 1.* This information is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

To the extent that Class Members would like further information, the Settlement Notice will be supplemented through the Settlement Website and telephone support line. *Settlement Agreement ¶ 3.3.* This further supports approval of the notice program. *See Pledger II*, 2021 WL 2253497, at *4 (approving notices that were supplemented by a settlement website and a call center); *Henderson*, 2020 WL 9848975, at *3 (approving notices that were supplemented by a settlement website).

Finally, Plaintiff requests that the Court schedule a Fairness Hearing on Plaintiff's motion for final approval of the Settlement and motion of an award of reasonable Attorneys' Fees and Costs, Administrative Expenses, and General Release Compensation as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Settlement Class Members to object, and considering final approval of the Settlement.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court preliminarily approve the settlement, certify the Settlement Class, and enter the accompanying proposed order.

Dated: February 16, 2024

**ENGSTROM LEE LLC**
/s/ Mark E. Thomson
Mark E. Thomson, MN No. 0398260*
Carl F. Engstrom, MN No. 0396298*
729 N. Washington Ave., Suite 600
Minneapolis, MN 55401
Telephone: (612) 305-8349
mthomson@engstromlee.com
cengstrom@engstromlee.com
* By Special Admission

**MORGAN & MORGAN, P.A.**
Marc R. Edelman, FL No. 0096342
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: (813) 223-5505
Fax: (813) 257-0572
medelman@forthepeople.com

**WENZEL FENTON CABASSA**
Brandon J. Hill, FL No. 0037061
Luis A. Cabassa, FL No. 0053643
Amanda E. Heystek, FL No. 0285020
1110 N. Florida Avenue, Suite 300
Tampa, FL 33602
Telephone: (813) 224-0431
bhill@wfclaw.com
lcabassa@wfclaw.com
aheystek@wfclaw.com

**ATTORNEYS FOR PLAINTIFF**

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned counsel for Plaintiff certifies that he conferred with counsel

for Defendants, and that Defendants do not oppose the relief sought herein.

/s/Mark E. Thomson
Mark E. Thomson

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of February, 2024, the foregoing

was electronically filed using the CM/ECF system, causing a Notice of Electronic

Filing to be transmitted to all counsel of record.

/s/Mark E. Thomson\_\_\_\_\_
Mark E. Thomson