# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| Robert Cothran, as the representative of a class of similarly situated persons, and on behalf of the Electric Supply Employee Stock Ownership Plan, | Case No. 8:23-cv-00518-CEH-CPT |
|     Plaintiff, | |
| v. | |
| George M. Adams Jr., Sandra Brock, Shaker Brock, Kelly A. Pound, and Harold Irwin, | |
|     Defendants. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS & ADMINISTRATIVE EXPENSES

Plaintiff Robert Cothran and Class Counsel,[1] without opposition, hereby move the Court for Award of Attorneys' Fees, Costs & Administrative Expenses. In support of this Motion, Class Counsel respectfully submits the following.

## BRIEF SUMMARY

On June 10, 2024, the Court granted Plaintiff's Unopposed Motion for Preliminary Approval of the Class-wide Settlement of the claims asserted on behalf of a class of participants in the Electric Supply Employee Stock Ownership Plan ("Plan")

---

[1] Capitalized terms in this Motion have the meaning assigned in the Settlement Agreement. *See* Dkt. 56-1.

1

against Defendants George M. Adams Jr., Sandra Brock, Shaker Brock, Kelly A. Pound, and Harold Irwin (collectively "Defendants"). Dkt. 55.

From the outset of this case, Class Counsel—with no guarantee of payment—worked diligently to identify, analyze, and pursue claims on behalf of Plaintiff and the Settlement Class. Class Counsel filed the action on March 8, 2023. Dkt. 1. The ensuing litigation culminated in the Settlement Agreement which, if approved, would provide an average recovery of more than $5,000 per Settlement Class Member on a gross basis.

For its efforts and the result obtained, Class Counsel now seeks (1) attorneys' fees in the amount of $366,300 (one-third of the $1,100,000 Gross Settlement Amount); (2) litigation expenses in the amount of $3,642; and (3) settlement administration expenses in the amount of $25,216, which includes $12,716 in expenses for the Settlement Administrator (Analytics Consulting LLC) and $12,500 for the Independent Fiduciary (Newport Trust Company) retained to review the Released Claims on behalf of the Plan.[2] Defendants do not oppose this motion.

## BACKGROUND

### I.    PRESENT STATUS

In an Order dated June 10, 2024, the Court preliminarily approved the Settlement, finding the Settlement Agreement's terms "fair, reasonable, and adequate." Dkt. 62 ¶ 1. Pursuant to the Court's Order, notice has been mailed to the

---

[2] Plaintiff does not seek any General Release Compensation.

Settlement Class Members.[3] To date, none have objected or asked to be excluded from the Settlement Class. The deadline for objections is August 29, 2024.

## II.    PLAINTIFF'S CLAIMS AND HISTORY OF THE ACTION

The work of Class Counsel is detailed in paragraph 11 of the accompanying Declaration of Mark E. Thomson ("Thomson Decl."), and is summarized below.

Plaintiff brought this action on behalf of the Settlement Class and the ESOP, alleging that Defendants illegally liquidated employees' retirement benefits for less than fair market value, thereby violating several ERISA provisions. Dkt. 1. Following lengthy document exchanges and dialogue with Defendants' counsel, Plaintiff refined his allegations in the Amended Complaint. Dkt. 23. Defendants moved to dismiss Plaintiff's claim that Defendants failed to obtain adequate consideration in the sale of the Plan's shares and stay discovery. Dkt. 36, 37. By July 2023, both motions were fully briefed. Dkts. 43, 45, 48. With Defendants' motions pending, Plaintiff continued discovery efforts, including serving several third-party subpoenas. Thomson Decl. ¶ 11. Through discovery, Plaintiff and his counsel acquired sufficient information (over 14,000 pages of documents) to better evaluate the merits and value of the claims. *Id.* Class Counsel weighed the risk of continuing litigation against the reward if the action were successfully prosecuted to conclusion. *Id.* With experienced counsel on both sides, extensive settlement negotiations commenced and several months later, the

---

[3] Plaintiff's Final Approval Motion will include a declaration from the Settlement Administrator (Analytics Consulting LLC) providing the details of the Notice to Settlement Class Members and any objections or requests for exclusion received.

parties reached an agreement in principle. *Id.* On December 11, 2023, the parties notified the Court and subsequently negotiated a comprehensive Settlement Agreement. Dkt. 51.

## III.   SETTLEMENT

The Settlement Agreement provides for a non-reversionary Qualified Settlement Fund in the amount of $1,100,000. The amount remaining after attorneys' fees and costs and expenses related to notice and administration will be allocated to Settlement Class Members *pro rata* based on each person's balance invested in the Plan's Other Investment Account.

Analytics Consulting LLC ("Analytics"), the appointed Settlement Administrator, mailed Notices to Class Members and established the Settlement Website and telephone support line as provided by the Settlement Agreement. Thomson Decl. ¶¶ 22-23. Analytics also will process the Rollover Forms submitted by Class Members, calculate payments to Class Members pursuant to the Plan of Allocation, and facilitate distribution of payments to Class Members in the event the Settlement receives final approval. *Id.*

The Escrow Agent (Huntington Bank) has invested one-half of the Gross Settlement Amount ($550,000) in the Qualified Settlement Fund while approval of the Settlement and distributions to Class Members are pending. Dkt. 56-1, Settlement Agreement ¶ 4.2(a). Within 28 days of final approval of the Settlement, Huntington Bank will invest the other half of the Gross Settlement Amount in the Qualified Settlement Fund, and will also execute the investment and tax qualification mandates

in the Settlement Agreement. *Id.* ¶¶ 4.2(b), 4.4-4.9.

## ARGUMENT

I.   **THE REQUESTED ATTORNEYS' FEES, COSTS, AND EXPENSES ARE REASONABLE**

The Eleventh Circuit has held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). Accordingly, "in this Circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id.* Courts have discretion to choose the proper percentage. "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case." *Camden I* at 774. Courts look at factors such as the time required to reach a settlement, whether there are any substantial objections, the economics of the class action, the criteria set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and any other "unique" circumstances. *Camden I* at 775. Here, Plaintiff requests his Counsel be awarded $366,300 in attorneys' fees, equal to one third (33.33%) of the $1,100,000 Gross Settlement Amount. Plaintiff's request is consistent with fee awards in ERISA and other class actions of similar size.

The Eleventh Circuit's factors for evaluating what percentage of the fund to award to counsel, commonly referred to as the *Johnson* factors, are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment

by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Camden I* at 772 n.3 (citing factors articulated in *Johnson*, 488 F.2d at 717-19).

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 775). These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id.* (quoting *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997)). The *Johnson* factors are discussed below.[4]

### A.   The Time and Labor Required was Reasonable

Since early 2023, Class Counsel has invested significant time investigating, researching, and litigating this action, and will continue to do so through the

---

[4] The seventh and eleventh *Johnson* factors—the "time limitations imposed by the client or the circumstances" and the "the nature and length of the attorney-client relationship," respectively—do not appear to be pertinent in this case.

conclusion of this case. The pre-suit research and analysis is reflected in the initial 39-page Complaint, including the novel allegation that Defendants had breached fiduciary duties by allowing Plan assets to remain in cash for an extended period of time. Dkt. 1 ¶ 107. Thereafter, Class Counsel filed an Amended Complaint; drafted and served discovery on Defendants and third parties; reviewed and analyzed discovery responses; negotiated the settlement; drafted the preliminary approval motion, including all notices; and oversaw the distribution of notice to the Settlement Class. Thomson Decl. ¶ 11.

Class Counsel's work on this matter remains ongoing. Prior to the Fairness Hearing, Class Counsel will draft Plaintiff's motion for final approval of the Settlement and respond to any objections. *Id.* ¶ 12. Class Counsel also will communicate with the Independent Fiduciary that has been engaged to review the Settlement, and will provide it with all necessary information in connection with its review. *Id.* Class Counsel will then attend the Fairness Hearing, and if final approval is granted, supervise the distribution of payments to eligible Class Members. *Id.* In addition, Class Counsel will continue to respond to questions from Class Members and take other actions necessary to support the Settlement until the conclusion of the Settlement Period. *Id.* Therefore, Class Counsel will have invested additional time to bring this matter to full and final resolution.

Class Counsel's significant time and effort were necessary to litigate the claims, and they led to an excellent result for the Settlement Class given the likely potential recovery. *See, e.g., Mashburn v. Nat. Healthcare, Inc.*, 684 F. Supp. 679, 693 (M.D. Ala.

1988) ("The critical element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel."); *Cates v. Trustees of Columbia Univ.*, No. 1:16–6524, 2021 WL 4847890, at *3 (S.D.N.Y Oct. 18, 2021) ("Class Counsel dedicated a significant amount of time and labor to its successful pursuit of this [ERISA] claim with no guarantee of payment.") (approving fee petition). The $1.1 million cash fund will result in an average gross recovery of $5,583 for each Settlement Class Member before fees, costs, and settlement administration expenses are deducted. Settlement Class Members will receive their share without having to complete a claim form.

The time spent on the case, and the results achieved for the Settlement Class, weigh in favor of Class Counsel's requested award of one-third of the Gross Settlement Amount.

### B.    Novelty and Difficulty of Questions Requiring a High Level of Skill

The second *Johnson* factor recognizes that attorneys should be appropriately compensated for accepting novel and difficult cases. *Johnson*, 488 F.2d at 718. The third *Johnson* factor is the "[t]he skill requisite to perform the legal service properly." *Id.* This third factor is directly connected to the second *Johnson* factor and requires the judge to "closely observe the attorney's work product, his preparation, and general ability before the court." *Id*. Because the second and third *Johnson* factors are interrelated, they are analyzed simultaneously below.

ERISA has long been recognized as a nuanced and specialized practice, especially with respect to Rule 23 class actions. In general, these cases are laborious,

fact intensive, and present difficult questions of both fact and law. Class Counsel—Engstrom Lee LLC; Morgan & Morgan, P.A. and Wentzel, Fenton & Cabassa, P.A.—have a demonstrated history of success in the ERISA class action cases. *See* Declarations of Mark E. Thomson, Marc R. Edelman, and Brandon J. Hill.

This case presented an extraordinary level of novelty and difficulty. The claim underlying this Settlement—that Defendants violated ERISA by failing to prudently invest the Plan's non-stock assets—has, to Class Counsel's knowledge, never been brought in any case before this one. Class Counsel expended substantial time investigating the facts of this claim, researching its legal bases, and modeling damages arising from Defendants' alleged breach. Courts in this circuit recognize that class actions involving novel legal theories are, by their nature, difficult to prosecute. *Yates v. Mobile County Personnel Bd.*, 719 F. 2d 1530, 1535 (11th Cir. 1983) (complicated litigation requires thorough and detailed research of almost every question involved).

The Eleventh Circuit recognizes skill as the "ultimate determinate of compensation level," as "reputation and experience are usually only proxies for skill." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1998). In *Norman*, the Eleventh Circuit listed several factors for district courts to consider in determining an attorney's skill. *Id.* Skill can be measured in several ways, including the degree of prudence and practicality exhibited by counsel at the beginning of the case. *Id.* The court explained that an attorney who has a sharp command of trial practice and a sound understanding of the substantive law governing the case, such that his time may be spent exploring the finer points raised by the issues, should be

compensated at a higher rate of pay than one who has to educate himself just to gain a general working knowledge of trial practice and law. *See id*. at 1301. Finally, the court noted that persuasiveness is an attribute of legal skill and defined a good advocate as one who advances his client's position in a clear and compelling manner. *Id*. The Eleventh Circuit also explained that the complexity of the case at hand may indicate skill. *See Yates*, 719 F.2d at 1535. In evaluating the skill involved, the Court should also consider the quality of Class Counsel's opposition. *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d at 1334.

Applying these factors, Class Counsel have shown themselves to be highly skilled and practical. Against a highly skilled adversary widely acknowledged as a leader in the ERISA defense bar, Class Counsel obtained a meaningful settlement based upon a novel theory of recovery: uninvested cash in an employee stock ownership plan. Moreover, Class Counsel acted efficiently by analyzing and evaluating evidence at an early juncture, refining allegations, and avoiding unnecessary motion practice and discovery. This weighs in favor of finding the requested fee reasonable.

### C. Preclusion of Other Employment

The fourth *Johnson* factor is "[t]he preclusion of other employment by the attorney due to acceptance of the case." *Johnson*, 488 F.2d at 718. This factor requires the dual consideration of otherwise available business which is foreclosed because of conflicts of interest arising from the representation, and the fact that once the employment is undertaken, the attorney is not free to use the time spent on the case

10

for other purposes. Here, the hours Class Counsel dedicated to prosecuting this action limited the amount of time and resources that Class Counsel was available to devote to other matters over the period of this litigation.

### D. Customary Fee

An award of $366,300 or one-third (33.33%) is within the range of fees typically awarded in the Middle District and other districts in the Eleventh Circuit for similarly sized class actions. *See, e.g.*, *Smith v. Kforce, Inc.*, No. 8:19-cv-02068-CEH-CPT, ECF 46 (M.D. Fla. June 28, 2021) (awarding class counsel one-third of $790,000 settlement fund in FCRA class action); *Mendiola v. Home Depot U.S.A,* No. 1:20-cv-04027-ELR, ECF 82 (N.D. Ga. Feb. 10, 2022) (awarding class counsel one-third of $815,000 settlement fund in COBRA class action); *Silberstein v. Petsmart, Inc.*, No. 8:19-cv-2800-SCB-AAS, ECF 37 (M.D. Fla. Dec. 4, 2020) (awarding class counsel one-third of $500,000 settlement fund in COBRA class action); *Hargrett v. Amazon.com DEDC LLC,* No. 8-15-cv-2456-WFJ-AAS, Dkt. 187 (M.D. Fla. Nov. 16, 2018) (awarding class counsel one-third of $5,000,000 settlement fund in FCRA class action); *Bryant v. Realogy Group, LLC*, No. 8:18-cv-2572-T-60CPT, ECF 53 (M.D. Fla. Sept. 4, 2020) (awarding class counsel one-third of $407,700 settlement fund in FCRA class action);[5] *see also Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) (average percentage award in the Eleventh Circuit is "roughly one-third"); *George v. Acad. Mortg.*

---

[5] For all cited authority, Morgan & Morgan and Wentzel, Fenton and Cabassa, individually or in combination, were class counsel.

*Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (describing one-third fee award as "typical").

A one-third fee award is especially common in ERISA class actions, which are "notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases." *Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849, at *6 (N.D. Cal. Oct. 21, 2021); *see also, e.g.*, *Clark v. Oasis Outsourcing Holdings Inc.*, No. 18-81101, ECF No. 23 at ¶ 1 (S.D. Fla. Dec. 20, 2018) (awarding one-third fee request in ERISA class action); *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) ("'[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case") (quoting *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016)); *Tussey v. ABB, Inc.*, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) ("Class Counsel's requested one-third fee is common in these cases."); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (same).

Here, the attorneys' fees requested are consistent with fees typically awarded in class actions within the Eleventh Circuit and in ERISA class actions across the country.

### E.    Contingent Nature of Engagement.

The sixth *Johnson* factor concerns the type of fee arrangement (hourly or contingent) entered into by the attorney. *Johnson*, 488 F.2d at 718. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988). As recognized in *Behrens*,

12

without a contingent fee, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing." *Id.*

Class Counsel took a substantial risk in prosecuting this action. This action was taken on a pure contingency basis with no guarantee of recovery. There were no assurances that a putative class would be certified, or that Plaintiff would have overcome a myriad of factual and legal defenses. From the onset, there was a real possibility that Class Counsel would not recover anything for the Settlement Class or for Class Counsel's time, including both hard costs and opportunity costs. For these reasons, this sixth *Johnson* factor supports the approval of the requested attorneys' fees. *Waters v. Cook's Pest Control, Inc.*, No. 2:07-CV-00394-LSC, 2012 WL 2923542, at *17 (N.D. Ala. July 17, 2012).

### F.    Amount Involved and the Results Obtained

Class Counsel recovered $1,100,000 for the benefit of all Settlement Class Members. After evaluating substantial discovery, Plaintiff concluded that settlement negotiations should concern the claim that Defendants imprudently invested the Plan's assets that were not invested in company stock, and not the claim that Defendants failed to obtain adequate consideration in the sale of the Plan's shares. Thomson Decl. ¶ 11.

The $1.1 million Gross Settlement Amount represents approximately 40% to 60% of the losses caused by Defendants' alleged mismanagement of the Plan's non-company stock investments, depending on the benchmark used for purposes of

calculating damages. Dkt. 56 ¶¶ 4 n.1, 13. This compares favorably with recoveries in other ERISA class actions. *See, e.g.*, *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at *8 (S.D. Ohio Feb. 18, 2021) (approving $10.5 million settlement that represented 30% of estimated damages, including damages due to imprudent investment selection); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving $24 million settlement that represented 19% of estimated damages, including damages due to imprudent investment selection); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858 (C.D. Cal. July 30, 2018) (approving $12 million settlement that represented 25% of estimated damages due to imprudent investment selection); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million settlement in ERISA case that included imprudent investment selection claim, where that amount represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *accord In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *Bennett v. Behring Corp.*, 737 F.2d 982, 986-87 & n.9 (11th Cir. 1984) (approving a settlement representing 5.6% of claims with maximum potential recovery); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ("[S]tanding alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims.").

Proceeding through trial would have been risky, complicated, protracted, and expensive relative to the amount at stake. Considering these circumstances, Class

Counsel obtained an excellent result, with guaranteed payments intended to augment Settlement Class Members' retirement accounts.

### G.    Experience, Reputation, and Ability of the Attorneys

Class Counsel sets forth their respective qualifications and prior experience in the attached declarations. *Supra at § I.B*; Declaration of Mark E. Thomson; Declaration of Marc R. Edelman; Declaration of Brandon J. Hill. This case has, at all stages, been handled on both sides by experienced lawyers whose reputations for effective handling of many types of complex litigation is known throughout the United States. Engstrom Lee's qualifications with regard to complex ESOP class actions were recently noted by another Court in this Middle District. *Colon v. Johnson*, No. 8:22-cv-888-TPB-TGW, ECF 278 at 11 (M.D. Fla. May 31, 2024) (finding that Engstrom Lee "clearly possess[es] the qualifications and experience to handle this litigation and act as settlement class counsel, as well as the resources needed to litigate this matter" and are "highly experienced in litigating ERISA cases"). This factor also weighs in favor of awarding the requested fee.

### H.    Undesirability of the Case

While Class Counsel has been honored to represent the Settlement Class in this effort to protect their retirement savings, the case was undesirable from an economic standpoint. *See Gevaerts v. TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *12 (S.D. Fla. Nov. 5, 2015) ("thorny factual circumstances" are "embodied by the term undesirable") (quoting *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1336). This is further supported by the fact that there is no overlapping case advanced by another

15

firm. *Id.* ("[C]ounsel should be rewarded for taking on a case from which other law firms shrunk.").

"ERISA is a complex and reticulated statute whose labyrinth-like sections have been the subject of much debate." *Tucker v. Employers Life Ins. Co.*, 689 F.Supp. 1073, 1074 (N.D. Ala. 1988). ERISA class actions involve facts which are "exceedingly complicated." *Conkright v. Frommert*, 559 U.S. 506, 509 (2010) (citation and quotation marks omitted); *see also Gilley v. Monsanto Co.*, 490 F.3d 848, 852 (11th Cir. 2007) (remarking that ERISA cases present a level of complexity and challenge that Justice Holmes, who "relished challenging cases[,]" would have enjoyed). "ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases." *Hurtado v. Rainbow Disposal Co., Inc.*, No. 8:17–1605, 2021 WL 2327858, at *4 (C.D. Cal. May 21, 2021) (citing *Pfeifer v. Wawa, Inc.*, No. 16–497, 2018 WL 4203880, at *7 (E.D. Pa. Aug. 31, 2018)).

Plaintiff's action depended on the conviction of Class Counsel; this is not a case where "media attention surrounding this case since before its inception" attracted counsel to the claims. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1336. Class Counsel in an ERISA case like this one must be knowledgeable about this complex and developing area of law, be aware of numerous merits and procedural pitfalls, be willing to risk dismissal at any stage, and be prepared to endure many years of litigation. The complexity and undesirability of these types of cases, requiring the skill of experienced ERISA attorneys, support Plaintiff's fee request.

I.      **Awards in Similar Cases**

"The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719. As detailed above, the fee award comports with the fees awarded to Class Counsel in similar ERISA class actions and other similarly sized actions in this Court and other district courts in the Eleventh Circuit.

II.     **THE ECONOMICS OF PROSECUTING A CLASS ACTION AND PUBLIC POLICY ALSO FAVOR THE REQUESTED ATTORNEYS' FEES AND COSTS**

Courts often also consider "the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775. Without the possibility of recovering an attorneys' fee, most class actions would never be filed. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved person may be without any effective redress unless they may employ the class action device"). Attorneys, like Class Counsel here, who undertake the risk to vindicate legal rights that may otherwise go un-redressed function as "the 'private attorney general.'" *Id.* at 338. This Court should "treat successfully fulfilling such a role as a *Johnson* factor when awarding class counsel attorneys' fees." *Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1217-18 (S.D. Fla. 2006).

Protecting American workers' retirement savings is important. Here, the individual recoveries may or may not be life-changing, but the aggregate recovery is significant and broader interests are advanced. Because of this litigation, ESOP

sponsors and fiduciaries are put on notice that they might one day be held accountable for breaching ERISA's fiduciary duties, hopefully deterring future misconduct.

In undertaking this case, Class Counsel assumed the risk of hundreds of hours of attorney time and thousands of dollars in costs. "Unless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any service to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct." *Id*. Thus, the economics of prosecuting this class action, along with public policy, support the requested fee sought by Class Counsel.

## III.   THE REQUESTED COSTS AND EXPENSES ARE REASONABLE AND SHOULD BE AWARDED

The requested litigation and settlement administration expenses are also reasonable and should be approved.

### A.   Litigation Expenses

Litigation expenses that may be reimbursed include "out-of-pocket costs and expenses that Class Counsel incurred during the prosecution and settlement of the Action[.]" *Gevaerts*, 2015 WL 6751061, at *14 (approving "fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses"; charges were "necessarily incurred" for the "benefit of the Settlement Class"). Here, Class Counsel advanced costs typically incurred in complex cases that were necessary to obtain the benefits of the Settlement for the

Settlement Class. *See id.*; Thomson Decl. ¶¶ 16-21.[6] Accordingly, the Court should approve reimbursement of the requested litigation expenses in the amount of $3,642.

### B.   Settlement Administration Expenses

The policy of "equitably distributing the fees and costs of successful litigation among all who gained" from the effort, *see Gevaerts*, 2015 WL 6751061, at *10, also applies to settlement administration expenses. *See Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2014 WL 11531917, at *3 (S.D. Fla. June 9, 2014) (ordering settlement administration expenses to be "paid out of the Settlement Fund"). Here, the requested administrative expenses are both reasonable and necessary.

The Notice and payment distribution services provided by Analytics are essential to carry out the Settlement. Likewise, review by the Independent Fiduciary is required by DOL regulations, and is deemed to be "critically important" and a benefit to Settlement Class Members. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010). Each of these expenses represents about 1% of the Gross Settlement Amount and is reasonable in light of time and expertise that will be

---

[6] In addition to costs related to filing fees and service of process, Plaintiff seeks recovery of costs associated with legal research and eDiscovery. These costs are recoverable under 29 U.S.C. § 1132(g)(2)(D). *Evans v. Books-A-Million*, 762 F.3d 1288, 1299 n.8 (11th Cir. 2014) (noting that "the Ninth Circuit has held that 'reasonable charges for computerized research may be recovered as attorney's fees under [ERISA] § 1132(g)(2)(D) if separate billing for such expenses is the prevailing practice in the local community.'") (quoting *Trustees of Const. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006)); *Del Rosario v. King & Prince Seafood Corp.*, No. CV 204-036, 2010 WL 11519378, at *12 (S.D. Ga. July 15, 2010) (approving such costs pursuant to 28 U.S.C. § 1132(g)(2)(D)); *Cromer-Tyler v. Teitel*, No. 101CV1077MEFSRW, 2007 WL 2684878, at *6 (M.D. Ala. Sept. 11, 2007) (same).

required. Accordingly, the total amount of $25,216 for payment of settlement administration expenses should be approved.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests the Court award Class Counsel attorneys' fees in the amount of $366,300, equal to one-third (33.33%) of the Gross Settlement Amount; reimbursement of litigation expenses incurred in the amount of $3,642; and payment to Analytics and Newport Trust Company in the aggregate amount of $25,216 for Notice and Administration of the Settlement and review by the Independent Fiduciary.

Dated: July 30, 2024

**ENGSTROM LEE LLC**
/s/Mark E. Thomson
Mark E. Thomson, MN No. 0398260*
Carl F. Engstrom, MN No. 0396298*
323 Washington Ave. N., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
mthomson@engstromlee.com
cengstrom@engstromlee.com

* By Special Admission

**MORGAN & MORGAN, P.A.**
Marc R. Edelman, FL No. 0096342
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 257-0572
medelman@forthepeople.com

**WENZEL FENTON CABASSA, P.A.**
Brandon J. Hill, FL No. 0037061
Luis A. Cabassa, FL No. 0053643
Amanda E. Heystek, FL No. 0285020
1110 N. Florida Avenue, Suite 300

Tampa, FL 33602
Telephone: (813) 224-0431
bhill@wfclaw.com
lcabassa@wfclaw.com
aheystek@wfclaw.com

**ATTORNEYS FOR PLAINTIFF**

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned counsel for Plaintiff certifies that he conferred with counsel

for Defendants, and that Defendants do not oppose the relief sought herein.

/s/Mark E. Thomson
Mark E. Thomson

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 30th day of July, 2024, the foregoing was electronically filed using the CM/ECF system, causing a Notice of Electronic Filing to be transmitted to all counsel of record.

/s/Mark E. Thomson
Mark E. Thomson