# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| Robert Cothran, as the representative of a class of similarly situated persons, and on behalf of the Electric Supply Employee Stock Ownership Plan,<br><br>     Plaintiff,<br><br>v.<br><br>George M. Adams Jr., Sandra Brock, Shaker Brock, Kelly A. Pound, and Harold Irwin,<br><br>     Defendants. | Case No. 8:23-cv-00518-CEH-CPT |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23(e) and the Court's Order Granting Preliminary approval of Class Action Settlement (Dkt. 62), Plaintiff and Class Counsel respectfully move for an Order granting final approval of the Parties' proposed Class Action Settlement Agreement (Dkt. 56-1). This motion is made based on the accompanying Memorandum of Points and Authorities, the Declarations of Mark E. Thomson, Marc R. Edelman, and Brandon J. Hill, and the previously submitted Declarations of Mark E. Thomson (Dkt. 56), Marc R. Edelman (Dkt. 57), Brandon J. Hill (Dkt. 58), and Robert Cothran (Dkt. 59), the Parties' Settlement Agreement, the Court's Order Granting Preliminary Approval of Class Action Settlement (Dkt. 62), and all other papers, pleadings, documents, arguments, and

materials presented before or during the hearing on this motion, and any other evidence or argument the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

On June 10, 2024, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiff's claims against Defendants under the Employee Retirement Income Security Act ("ERISA") relating to the Electric Supply Employee Stock Ownership Plan. Dkt. 62. The Court found on a preliminary basis that "the Settlement Agreement is fair, reasonable, and adequate, and within the range of possible approval" and "has been negotiated in good faith at arms-length between experienced attorneys familiar with the legal and factual issues of this case following substantial discovery." *Id.* ¶ 1. The Court approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *Id.* ¶ 3. Since that time, an Independent Fiduciary has confirmed that the Settlement terms are reasonable, *see* Declaration of Mark E. Thomson in Support of Motion for Final Approval of Class Action Settlement ("Third Thomson Decl.") ¶ 2, and not a single Class Member has objected to the Settlement. *Id.* ¶ 3. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement. As parties to the Settlement, Defendants do not oppose this motion.

## FACTUAL BACKGROUND

### I.   PROCEDURAL HISTORY LEADING TO SETTLEMENT

On March 8, 2023, the Class Representative, Robert Cothran, filed a Class Action Complaint (Dkt. 1) asserting two claims against Defendants under ERISA: (1) failure to obtain adequate consideration in the sale of the Plan's shares, and (2) imprudent investment of the Plan's assets that were not invested in company stock. On May 4, 2023, an Amended Complaint was filed. Dkt. 23. On June 8, 2023, Defendants filed a motion to dismiss Plaintiff's claims that Defendants failed to obtain adequate consideration in the sale of the Plan's shares. Dkt. 36.[1] Plaintiff filed a response to Defendants' motion on June 29, 2023, Dkt. 43, to which Defendants replied on July 21, 2023, Dkt. 48. Defendants' motion to dismiss remained pending at the time the Parties filed a Notice of Settlement on December 11, 2023. Dkt. 51.

While Defendants' motion to dismiss was pending, Plaintiff commenced discovery. On August 23, 2023, Plaintiff served on Defendants 63 Requests for Production of Documents. Dkt. 56 ("First Thomson Decl.") ¶ 11. Plaintiff also served document subpoenas on multiple third parties during this period. *Id.* Plaintiffs received more than 14,000 pages in response to these discovery requests. *Id.*

Following review of these materials, the Parties engaged in settlement discussions over the course of several months. *Id.* ¶ 12. After extensive arm's length

---

[1] Defendants did not move to dismiss Plaintiff's claim that Defendants imprudently invested the Plan's assets that were not invested in company stock.

negotiations, the parties reached a settlement in principle, and then drafted the comprehensive Settlement Agreement that is the subject of this motion. *Id.*

## II.   SETTLEMENT TERMS AND PRELIMINARY APPROVAL

Under the terms of the Settlement, a Gross Settlement Amount of $1.1 million will be paid to resolve the claims of the Class Members. Dkt. 56-1 ("Settlement Agreement") ¶ 1.23. After accounting for any Attorneys' Fees and Costs and Administrative Expenses approved by the Court, the Net Settlement Amount will be distributed to Class Members in accordance with the Plan of Allocation in the Settlement. *Id.* ¶¶ 1.26, 5.1.

Under the Plan of Allocation, the Settlement Administrator[2] shall determine a Settlement Allocation Score for each Settlement Class Member. *Id.* ¶ 5.1. For purposes of making this determination, the Settlement Allocation Score shall be calculated based on each Settlement Class Member's average yearly balance in the Plan's Other Investments Account during the Class Period. *Id.*

Settlement Class Members may elect to have their share of the Net Settlement Amount rolled over into an individual retirement account or other eligible employer plan by submitting a Rollover Form. *Id.* ¶ 5.2. Settlement Class Members who do not submit a Rollover Form will receive their share via check. *Id.* Under no circumstances will any monies revert to Defendants. *Id.* ¶ 5.5(c).

---

[2] The court-appointed Settlement Administrator is Analytics Consulting LLC ("Analytics"). Dkt. 62 ¶ 6.

On February 16, 2024, Plaintiffs moved for preliminary approval of the Settlement. Dkt. 56. The Court held a hearing on April 26, 2024. Dkts. 60, 61. Following that hearing, on June 17, 2024 the Court granted preliminary approval. Dkt. 62.

## III.   CLASS NOTICE AND REACTION TO SETTLEMENT

On and before July 10, 2024, Analytics Consulting LLC ("Analytics"), the appointed Settlement Administrator, mailed Notices to Class Members and established the Settlement Website and telephone support line as provided by the Settlement Agreement. Dkt. 65 ("Second Thomson Decl.") ¶¶ 22-23.

Prior to sending these Notices, Analytics cross-referenced the addresses on the class list with the United States Postal Service National Change of Address ("NCOA") Database. Declaration of Jeffrey Mitchell in Support of Final Approval of Class Action Settlement ("Mitchell Decl.") ¶ 8. For any Settlement Notices that were returned, Analytics performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id.* ¶ 10. As a result, the notice program was very effective. Out of 197 Settlement Notices that were mailed, only eight were ultimately undeliverable despite these efforts. *Id.* ¶ 11.

Should any Class Members have desired further information, Analytics established a settlement website at www.electricsupplyesopsettlement.com. *Id.* ¶ 12. Among other things, the Settlement Website included: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Dates" page, each containing clear notice of applicable

deadlines; (3) a "Court Documents" page, which includes case and settlement documents for download (including the Complaint, the Settlement Agreement, Settlement Notices, Rollover Form, Plaintiff's Motion for Preliminary Approval and supporting declarations and exhibits, the Court's Preliminary Approval Order, and Plaintiff's Motion for Approval of Attorneys' Fees, Costs, & Administrative Expenses and supporting declarations and exhibits); (4) contact information for Class Counsel and Defendants' Counsel; and (5) email, phone, and U.S. mail contact information for Analytics. *Id.* ¶ 12. In addition, Analytics created and maintained a toll-free telephone support line (1-888-424-5540) as a resource for Class Members seeking information about the Settlement. *Id.* ¶ 13. This telephone number was referenced in the Notices, and also appears on the settlement website. *Id.*

The deadline to submit objections to the Settlement was August 29, 2024. Dkt. 62 ¶ 8. No class member objected to the Settlement. Third Thomson Decl. ¶ 3.

## IV.    REVIEW AND APPROVAL BY INDEPENDENT FIDICUIARY

Pursuant to Paragraph 2.2 of the Settlement and applicable ERISA regulations,[3] the Settlement was submitted to an independent fiduciary (Newport Trust Company) for review following the Court's preliminary approval order. After reviewing the Settlement, the plan of allocation, Plaintiff's request for attorneys' fees, and other case documents, and interviewing counsel for each of the Parties, the Independent Fiduciary deemed reasonable (1) the $1.1 million Settlement amount, (2) the scope of

---

[3] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

the release of claims, and (3) the amount of any attorneys' fee award or any other sums

to be paid from the recovery. Accordingly, the Independent Fiduciary authorized the

Plan's participation in the Settlement.

## ARGUMENT

## I.   THE SETTLEMENT SATSIFIES RULE 23(E)(2)

Rule 23(e) provides that a class action cannot be settled without court approval.

That rule directs courts to consider the following factors at the final approval stage in

determining whether a settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately
> represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)    the costs, risks, and delay of trial and appeal;
>> (ii)   the effectiveness of any proposed method of distributing relief to
>> the class;
>> (iii)  the terms of any proposed award of attorney's fees; and
>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1114–

15 (M.D. Fla. 2021); *Millstein v. Holtz*, 2022 WL 18024840, at *3 (S.D. Fla. Dec. 30,

2022).

In tandem with Rule 23(e), courts within the Eleventh Circuit evaluate class

action settlements under six factors outlined in *Bennett v. Behring Corp.*, 737 F.2d 982,

986 (11th Cir. 1984): (1) the likelihood of success at trial; (2) the range of possible

recovery; (3) the point on or below the range of possible recovery at which the

settlement is fair, adequate and reasonable; (4) the complexity, expense and duration

of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. Plaintiff addresses each of these factors to the extent they are applicable. Because many *Bennett* factors overlap with those of Rule 23(e)(2),[4] Plaintiff addresses them together. *See In re Blue Cross*, 2020 WL 8256366, at *15 (citation omitted).

Whether to approve a class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986. The question is "whether [the proposed settlement] is within the range of fair, reasonable and adequate." *Exum v. Nat'l Tire & Battery*, 2020 WL 1670997, at *7 (S.D. Fla. Apr. 6, 2020) (citing MANUAL FOR COMPLEX LITIG. § 30.41). "Where [ ] the proposed settlement is the result of serious, arms-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, achieves favorable outcomes for plaintiffs and the class, and does not grant preferential treatment to plaintiffs or other segments of the class, courts generally grant approval." *Id.*

---

[4] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv) and therefore this factor is not addressed. *See Millstein v. Holtz*, No. 21-CV-61179-RAR, 2022 WL 18024840, at *8 (S.D. Fla. Dec. 30, 2022) ("The Court finds there are no other agreements with SHPC other than the Settlement, which weighs in favor of a finding that the Settlement Agreement is fair and adequate.").

### A.    The Class Representative and Class Counsel Adequately Represented the Class

The appointed Class Representative, Robert Cothran, is an adequate class representative. He has been actively engaged in the litigation and provided documents to counsel used to draft the Complaint and the Amended Complaint. Dkt. 59 ("Cothran Decl.") ¶ 3; First Thomson Decl. ¶ 22. Mr. Cothran has no conflicts with the Class. Cothran Decl. ¶ 2. He asserts claims on the Plan's behalf and requests no separate individual relief. Through his diligence and work on behalf of the Class, Mr. Cothran has adequately represented the Class.

Appointed Class Counsel has likewise adequately represented the Class. They comprise attorneys with extensive class action experience, including ERISA class action experience. *See* First Thomson Decl. ¶¶ 14-21; Dkt. 57 ¶ 5; Dkt 58 ¶ 6. Class Counsel have worked diligently to litigate the claims here and have brought sufficient skill and resources to litigate this case. *See* First Thomson Decl. ¶¶ 9-13.

### B.    The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the court to determine whether a proposed settlement "was negotiated at arm's length." Relatedly, the *Bennett* factors require the court to rule out the possibility of fraud or collusion behind the Settlement. *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

The Settlement was preceded by hard-fought motion practice and a substantial exchange of discovery. *See supra* at 3-4. The parties then entered settlement negotiations with an understanding of where the strengths and weaknesses of their

arguments lay, and both sides engaged in extensive bargaining over months of discussions. *See* First Thomson Decl. ¶¶ 9-13. Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement . . . counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005); *see also Millstein v. Holtz*, 2022 WL 18024840, at *4 (S.D. Fla. Dec. 30, 2022) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion.").

### C.   The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2)(C) and All Relevant *Bennet* Factors

### i.   Adequacy of Relief Given Litigation Risks, Expense, Duration

The Parties had different views about Defendants' actions, Defendants' potential liability, and the likely outcome of the litigation. Plaintiff alleged that Defendants' selection and retention of the Plan's non-company stock investments was imprudent. During the Parties' settlement negotiations, Defendants denied these allegations and defended their actions with respect to the Plan, arguing that their investment selections were prudent and that Plaintiff's proposed alternatives were inappropriate.

If the Action were to proceed, Plaintiff would have to overcome these and other defenses and arguments. These fact-intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have created uncertainty as to the ultimate outcome of the litigation. *See Swaney*, 2020 WL 3064945, at *4

("Because 'the outcome on class certification and the ultimate outcome on the merits was uncertain for both parties,' a settlement was reached and here that is appropriate.") (quoting *Parsons*, 2015 WL 13629647, at *2). Trial would have required Class Counsel to conduct further discovery and prepare and argue motions for class certification and summary judgment, presenting potential risks. *See, e.g.*, *Pledger v. Reliance Tr. Co.* ("*Pledger I*"), 2019 WL 10886802, at *24-25 (N.D. Ga. Mar. 28, 2019) (granting summary judgment in defendants' favor on ERISA claim involving retention of allegedly imprudent investments). Even if Plaintiff prevailed at trial on liability, issues would have remained regarding proof of loss. *See, e.g.*, *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134-35 (D. Colo. 2020) (awarding less than 2% of the damages sought in ERISA class action); *see also Millstein*, 2022 WL 18024840, at *4 (first *Bennett* favors settlement approval "where the litigation involves numerous class members and significant time and expense"); *Hall v. Bank of Am.*, N.A., 2014 WL 7184039, at *4 (S.D. Fla. Dec. 17, 2014) (holding this factor favored settlement approval where "[c]ontinuing to litigate the[ ] claims would have been time-consuming and expensive" and "even if plaintiffs were to prevail, class certification proceedings, a class trial and the appellate process could go on for years").

None of this is to say that Plaintiff lacked confidence in his claims. However, there is little doubt that continuing the litigation would have resulted in complex and costly proceedings, which would have significantly delayed relief to Class Members even if Plaintiff ultimately prevailed. ERISA cases such as this "often lead[] to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13,

2015). Indeed, these cases can extend for a decade before final resolution, sometimes going through multiple appeals.[5] Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiff to reach a settlement on the terms that were negotiated. *See Henderson*, 2020 WL 9848975, at *6 ("The guaranteed recovery under the settlement outweighs the possibility of any future relief after such continued and lengthy litigation."); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *6 ("[I]t is unclear whether future recovery at trial could achieve more than the relief made available in the Settlement. The early settlement of this case benefits the Settlement Class and weighs strongly in favor of final approval."); *Bennett v. Behring Corp.*, 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984).

### ii.    Stage of Proceedings and Development of the Factual Record

The sixth *Bennett* factor asks the court to consider whether "the case settled at a stage of the proceedings where class counsel had sufficient knowledge of the law and facts to fairly weigh the benefits of the settlement against the potential risk of continued litigation." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *10 (N.D. Ga. Mar. 17, 2020).

---

[5] *See, e.g., Fuller v. SunTrust Banks, Inc.*, No. 1:11-cv-00784, Dkt. 295-1 at 10-11 (N.D. Ga. June 5, 2020) ("Plaintiffs and their counsel persisted despite the denial of the administrative claim, the appeal of that claim, dismissal of two of the constituent cases, and one unsuccessful appeal to the Eleventh Circuit."); *Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (recounting lengthy procedural history of case that was initially filed in 2006, and remanding to district court a second time); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007).

Substantial document discovery was completed and the Parties fully briefed Defendants' motion to dismiss, which was pending at the time the Parties agreed to settle. *Supra* at 3. Contested motion practice and early discovery armed Class Counsel with enough information to fairly evaluate the strengths and weaknesses of the Class's claims. *See In re Blue Cross*, 2020 WL 8256366, at *16 ("The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." (citation omitted)); *Millstein*, 2022 WL 18024840, at *5 (finding class counsel was well-informed of strengths and weaknesses of the class's claims where early discovery resulted in settlement before the defendant filed a motion to dismiss or answer).

Having obtained the necessary information to assess the strengths and weaknesses of their respective positions and with best interests of the Plan in mind, the Parties reached a fair and equitable settlement agreement. Counsel for Plaintiff have litigated numerous ERISA class actions presenting similar issues, settling many while taking others to trial. First Thomson Decl. ¶¶ 16-19. As such, Plaintiff's Counsel is intimately familiar with Plan fiduciaries' responsibilities under ERISA. Similarly, Defendants' counsel is familiar with the documents and information Plaintiff's Counsel requested, which allowed the Parties to fully and fairly assess the allegations and strengths and weaknesses of their respective positions at an early stage, to the benefit of the Class. The Court should give "great weight to the recommendation of the parties, given their considerable experience in the litigation." *Millstein*, 2022 WL 18024840, at *6 (S.D. Fla. Dec. 30, 2022); *see also In re Domestic Air Transp.*, 148 F.R.D.

13

297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations and internal quotation marks omitted); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 672 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe that these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

### iii. Range of Possible Recovery and the Point On or Below the Range of Possible Recovery at Which the Settlement is Fair, Adequate, and Reasonable

The second and third *Bennett* factors are "easily combined and normally considered in concert." *Camp v. City of Pelham*, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014). "In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim [ ] that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Millstein*, 2022 WL 18024840, at *6 (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1350). Indeed, "[i]t is important to weigh the benefits Settlement Class Members will receive from the Settlement against the risks of moving forward and recovering nothing." *Id.*

Under this standard, the relief provided by the Settlement is adequate. After evaluating substantial discovery, Plaintiff concluded that settlement negotiations should concern the claim that Defendants imprudently invested the Plan's non-

company stock assets, and not Defendants' failure to obtain adequate consideration in the sale of the Plan's shares. First Thomson Decl. ¶ 12. The $1.1 million Gross Settlement Amount represents approximately 40% to 60% of the losses caused by Defendants' alleged mismanagement of the Plan's non-company stock investments, depending on the benchmark Plaintiff used for purposes of calculating damages.[6] *Id.* ¶ 13. This compares favorably with recoveries in other ERISA class actions. *See, e.g.*, *Karpik*, 2021 WL 757123, at *8 (approving $10.5 million settlement that represented 30% of estimated damages, including damages due to imprudent investment selection); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving $24 million settlement that represented 19% of estimated damages, including damages due to imprudent investment selection); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858 (C.D. Cal. July 30, 2018) (approving $12 million settlement that represented 25% of estimated damages due to imprudent investment selection); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million settlement in ERISA case that included imprudent investment selection claim, where that amount represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *accord In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that class action settlements have typically "recovered between 5.5% and 6.2% of the class members'

---

[6] Plaintiff used two models to calculate the allegedly losses. *See id.* ¶ 13. The first model was based on the returns of a microcap index fund. *Id.* The second model was based on the returns of an S&P 500 index fund. *Id.*

estimated losses"); *Bennett*, 737 F.2d at 986-87 & n.9 (approving a settlement representing 5.6% of claims with maximum potential recovery); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ("[S]tanding alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims.").

### iv.   Effectiveness of the Proposed Method of Distributing Relief

Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. As noted above, Class Members do not need to submit a claim form in order to receive their distribution and will receive an automatic payment in the form of a check. *Supra* at 4. This favors approval. *See Dean v. Cumulus Media, Inc.*, No. 1:22-cv-04956-TWT, Dkt. 16 at 5 (N.D. Ga. Feb. 16, 2023) ("The method of distributing the Class Settlement Amount is efficient, relying on Defendants' records and requiring no filing of claims."). Class Members also were given the option to receive their Settlement distribution in the form of a rollover to another qualified retirement account by submitting a rollover form. Settlement Agreement §§ 1.24, 5.43. This method of distribution potentially avoids negative tax consequences for Class Members and also warrants approval. *See Pledger v. Reliance Tr. Co.*, 2021 WL 2253497, at *4 (N.D. Ga. Mar. 8, 2021) ("*Pledger II*") (approving similar distribution method in which former participant class members were given the option of receiving a check or rollover, but were required to submit a claim form to receive payment). Under no circumstances will money revert to Defendants. Settlement Agreement § 5.5(c).

### v.   Terms of the Proposed Award of Attorneys' Fees are Fair

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment.[7] Class Counsel has filed an application seeking an award of attorneys' fees in the amount of $366,666.66 (1/3 of the Settlement Amount), plus reimbursement of litigation expenses. Dkt. 64. One-third is the percentage typically awarded in complex ERISA cases such as this. *See Kruger v. Novant Health*, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) ("[C]ourts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this matter"); *Krueger*, 2015 WL 4246879, at *2 ("In such cases, courts have consistently awarded one-third contingent fees."); *Karpik*, 2021 WL 757123, at *7 (approving one-third fee in ERISA class action); *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (same); *Sims*, 2019 WL 1995314, at *2 (M.D.N.C. May 6, 2019) (same); *Clark v. Oasis Outsourcing Holdings Inc.*, No. 18-81101, Dkt. 23 at ¶ 1 (S.D. Fla. Dec. 20, 2018) (same). Class Counsel has also requested reimbursement of litigation costs and administrative expenses, which is likewise reasonable. *Gevaerts v. TD Bank*, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 11, 2015).

### vi.   The Absence of Objections to the Settlement

The fifth *Bennett* factor evaluates the "substance and amount of opposition to the settlement." *Bennett*, 737 F.2d at 986. "Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would

---

[7] The reasonableness of the proposed attorneys' fee award is thoroughly addressed in Plaintiff's Motion for Attorneys' Fees, Costs & Administrative Expenses. Dkt. 64.

provide a basis for finding the settlement was unreasonable." *Millstein*, 2022 SL 18024840, at *6. Here, no Settlement Class Member has objected to the Settlement, weighing in favor of approval. Third Thomson Decl. ¶ 3.

### D.   The Proposed Plan of Allocation Treats Class Members Equitably

Under Rule 23(e)(2)(D), the Court must consider whether the proposal treats class members equitably relative to each other. The Settlement proceeds will be distributed to Class Members on a *pro rata* basis based on a common allocation formula. *See* Settlement Agreement ¶ 5.1. According to that process, individual Class Members will receive *pro rata* distributions based on each Class Member's percentage of the assets invested in the Plan's Other Investments Account. Courts in this Circuit have found such *pro rata* distributions appropriate. *See, e.g.*, *Millstein*, 2022 WL 18024840, at *7 (S.D. Fla. Dec. 30, 2022) (approving settlement and finding this factor satisfied where "each Settlement Class Member will receive a pro rata share of the Settlement Fund, based on each Class Member's investment."); *McWhorter*, 2019 WL 9171207, at *12; *Cifuentes v. Regions Bank*, No. 11-23455, 2014 WL 1153772, at *3 (S.D. Fla. Mar. 20, 2014).

## II.   THE CLASS NOTICE WAS REASONABLE

Finally, the Court-approved class notice program is reasonable and satisfied the requirements of Due Process and Rule 23. The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here. It "was designed to provide the best notice practicable

and was tailored to take advantage of the information Defendant had available about Settlement Class members." *Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at *3 (S.D. Fla. July 13, 2021).

The Settlement Administrator mailed the Court-approved Settlement Notices to Class Members via U.S. Mail to their last known address and less than five percent of notices were returned as undeliverable. Mitchell Decl. ¶ 11. Analytics also set up a website that included the Settlement Agreement, all relevant court pleadings, important court deadlines, copies of the Court-approved notice and rollover form, counsel's contact information, and a toll-free number. *Supra* at 6; Mitchell Decl. ¶ 12. This website received 72 unique visitors. Mitchell Decl. ¶ 12. Analytics also set up a toll-free telephone support line as a resource for Class Members seeking information about the Settlement. *Id.* ¶ 13. 24 Class Members called this toll-free number. *Id.*

This "state of the art" notice campaign "was designed to provide the best notice practicable" "using four different methods: (1) print; (2) digital; (3) a Settlement Website; and (4) a toll-free number." *Ferron*, 2021 WL 2940240, at *3 (S.D. Fla. July 13, 2021) (finally approving nearly identical notice method); *see also Kuhr*, 530 F. Supp. 3d at 1114 (finally approving similar notice method where "the parties complied with the agreed-to notice provisions as preliminarily approved by the Court, and … there [were] no developments or changes in the facts to alter the Court's previous conclusion").

III.    **THE CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE REAFFIRMED**

In its Order preliminarily approving the settlement, the Court certified the following Settlement Class:

> All participants of the ESOP who had an account balance greater than zero at any time between January 1, 2016 and April 14, 2021, excluding Defendants.

Dkt. 62 at 2.

In his Motion for Preliminary Approval of Class Action Settlement, Plaintiff demonstrated that (1) the class is sufficiently numerous; (2) Plaintiff raises common issues in the Class Action Complaint; (3) Plaintiff's claims are typical of other class members' claims; (4) Plaintiff is an adequate class representatives; (5) Class Counsel is experienced and competent; (6) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(B) because any individual adjudication would be dispositive of the interests of other class members. Dkt. 55 at 8-13.

Nothing has changed since the Court preliminarily certified the Class. Accordingly, the Court should reaffirm its certification of the Settlement Class for purposes of final approval. *See Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1114 (M.D. Fla. 2021) ("The Court notes that there have been no objections to class certification and no change in circumstances to alter the Court's previous conclusions. Thus, the Court will finally certify the class for the reasons stated in the Preliminary Approval Order.").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order granting final approval of the Settlement in the form submitted herewith.

## LOCAL RULE 3.01(G) CERTIFICATION

On September 4, 2024, counsel for Plaintiff conferred with counsel for Defendants regarding this motion, and have been advised that Defendants do not oppose this motion.

Dated: September 5, 2024

**ENGSTROM LEE LLC**
/s/Mark E. Thomson
Mark E. Thomson, MN No. 0398260*
Carl F. Engstrom, MN No. 0396298*
323 Washington Ave. N., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
cengstrom@engstromlee.com
mthomson@engstromlee.com

* By Special Admission

**MORGAN & MORGAN, P.A.**
Marc R. Edelman, FL No. 0096342
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: (813) 223-5505
Fax: (813) 257-0572
medelman@forthepeople.com

**WENZEL FENTON CABASSA**
Brandon J. Hill, FL No. 0037061
Luis A. Cabassa, FL No. 0053643
Amanda E. Heystek, FL No. 0285020
1110 N. Florida Avenue, Suite 300
Tampa, FL 33602
Telephone: (813) 224-0431
bhill@wfclaw.com
lcabassa@wfclaw.com

aheystek@wfclaw.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 5th day of September, 2024, the foregoing

was electronically filed using the CM/ECF system, causing a Notice of Electronic

Filing to be transmitted to all counsel of record.

/s/Mark E. Thomson
Mark E. Thomson